State *v.* Haines.

THE STATE *versus* DUDLEY L. HAINES & *al.*

In a criminal prosecution, the Judge is not bound to quash the indictment on motion. The defendant should take the advantage by demurrer or in arrest of judgment.

Upon a motion in arrest, a common law indictment is good, which alleges that defendant " with force and arms, near the dwelling houses of divers citizens and near divers streets and common highways, did unlawfully erect, continue and use a certain building as a place for bowling, with a bowling alley therein, to which divers persons have been, and now are, accustomed to resort for the purpose of bowling, and, being so there, to play at bowls in the day time and also in the night time, thereby occasioning great noises, damage and other annoyances, and becoming injurious and dangerous to the comfort of divers individuals and the public, and to the common nuisance," &c.

*It seems, also,* that upon such a motion, an indictment would be good, which charges that the defendant did unlawfully keep and maintain, for his own lucre, a common and disorderly room, called a bowling alley, and did unlawfully procure and permit divers persons to frequent and come together at said alley for the purpose of bowling, and being so together, there to play at bowls in the day time and in the night time, to the great annoyance, damage and common nuisance of all the citizens of the State.

Upon conviction of a nuisance, the Court may punish by a fine only. Or they may also cause the nuisance to be abated. But such abatement will not be required when strangers to the proceedings might be improperly affected.

INDICTMENT tried in the District Court, RICE, J.

VOL. XVII. 9

The first count charged that the defendant and another person unlawfully and injuriously did keep and maintain a certain common and disorderly room called a bowling alley, for their own lucre and gain, and did unlawfully and injuriously cause and procure, and suffer and permit divers persons, to the jurors unknown, to frequent and come together at said alley for the purpose of bowling, and being so come together, there to play at bowls in the day time and also in the night time, to the great annoyance, damage and common nuisance of all the citizens of said State of Maine and against the peace and dignity thereof.

The second count charged, that the defendant and another person at Winthrop, near the dwellinghouses of divers citizens of said State, and near divers streets and common highways in said town, did unlawfully and injuriously erect, continue and use a certain building, as a place for bowling, with a bowling alley therein, to which divers persons, to the jurors unknown, have been since said first day of January, and now are accustomed to resort for the purpose of bowling, and being so there, to play at bowls in the day time and also in the night time, thereby occasioning great noises, damage, and other annoyances, and becoming and being injurious and dangerous to the comfort of divers individuals and the public, and to the common nuisance of all the citizens of said State inhabiting and residing near to said bowling alley, as well as all the said citizens going and returning, passing and repassing in and through the streets and common highways aforesaid, against the peace of said State of Maine.

The defendant contended that the indictment was bad and insufficient in law, because " it does not set forth specifically any crime at common law, and does not state particularly the facts which constitute the act charged therein a crime." But the Court ruled that the indictment was sufficient."

There was no proof that there had been rolling, playing, or gaming upon the alley for money or other things, but it was proved that boys and young men were accustomed to assemble there, and to roll upon the alley for amusement ; that the

noises complained of were from the rolling of the balls and the falling of the pins; that a price was paid for the use of the alley ; and that those using it, were accustomed to roll, to see who should pay for the alley ; and that the price was generally paid by the party, who upon rolling, got the fewest pins, but sometimes it was paid for in equal parts, between them."

The Court instructed the jury, that " they were to judge from the evidence whether it was or not such a source of annoyance and disturbance to the neighborhood and to the public generally as to constitute it a common and public nuisance; that, if they should find the alley to have been kept for gaming, that would of itself constitute it a common and public nuisance ; but that the rolling to see who should pay for the alley would not show it to be a common gaming room.

Defendant introduced one Darius Robbins who testified that, on Nov. 23, 1847, he took a deed of the premises on which the alley is, and now holds the same; that he paid $300 at the time of taking the deed, and gave his note for $300 for the balance of the purchase, and gave a mortgage upon the premises to secure the payment of the note in one year from that date ; that there was a stable on the premises and that his grantor reserved the use of about one-half of the stable until the first of May next, in which to stable his horses and stow some baggage, and had so used it to the present time ; that the alley is a new building, built upon and in addition to the stable since the deed to Robbins ; that when Robbins bargained for the premises, Haines was present; that it was the agreement between Haines and Robbins, that Haines was to be jointly interested in the purchase ; but when the deed was made, Haines was not prepared to pay for one-half the purchase, or for any part, and accordingly the deed was made to Robbins, he paying as above stated ; that it was understood and agreed verbally between Haines and Robbins, that Haines was to have one-half the purchase, if he pays one-half the purchase money at the end of the year ; that in pursuance of that arrangement, said Haines and Robbins went into possession of that part of the stable, not occupied by the grantor, about the

first December last, and from that time have occupied the same as a livery stable in company ; that afterwards they concluded to build the alley together, each paying half the expenses ; that they made their contracts for the lumber and for putting up the building for that purpose ; but that sometime in December, and before the alley was fit for use, they were called upon for payment for their lumber and for the building ; that Haines was unprepared to pay his part and said it had cost much more than he expected ; that he could not pay and must give it up, and that therefore it was agreed between them to continue their business together in the stable, but that Robbins was to finish the alley and own it, and Haines was to have nothing to do with it ; and that accordingly Robbins finished the alley and owned it ; that he had paid the bills for building, except some small bills in one or two instances when Haines had paid, where the bill had been made to them both and was for work done for them in the stable, and in which was included some for labor or materials upon the alley ; that Haines had been in the alley often and had assisted him, and when he had been gone away, had taken the money for the alley and had kept a separate account of it ; that he, Robbins, had seen it and looked it over, but had not settled with Haines ; and that he, Robbins, also kept a separate account of moneys, received on account of said alley, by himself.

The government introduced evidence, tending to show that Haines had an interest in the alley ; that he had often been there taking direction of it and taking money for its use, and had been known to have control of it many times in the absence of Robbins ; and when Robbins had been present and when both the alleys were in operation, Haines had taken care of one, and had paid some small bills against Haines and Robbins, in which were items furnished for the alley ; that he jointly contracted with Robbins for the building for the alley, for the lumber and other articles, and that defendant, after the alley had been in operation a month, had stated "we have cleared $100, the first month from the alley."

The defendant contended, that he had not such ownership

State v. Haines.

and interest and control and management in the alley as would render him chargeable in this indictment.

The Court instructed the jury that if, from the evidence, they should be satisfied that the alleys were a common nuisance as alleged in the indictment, and that the defendant was the sole or joint owner of them, or that he was in possession and had the care and control of the alleys, either by himself or jointly with others, in either event, he would be liable in this prosecution.

The verdict was against the defendant, and he excepted.

*Morrell*, for defendant.

The indictment does not set out any offence indictable as a common and a public nuisance, nor does it specify acts which of themselves constitute the offence.

1. The whole charge, stripped of its formal parts, is this : — " did keep and maintain a common and disorderly room, &c., called a bowling alley, for their own gain."

2. It is not every " common and disorderly room," that is a *public nuisance,* but it depends upon whether dissolute and disorderly persons assembled there, and whether unlawful games and practices are pursued there.

The " disorder" may be the result of legitimate business or trade, and it may be of a private instead of a public character.

Play houses are not in themselves nuisances, though by neglect and mismanagement they may be rendered so.   4 Bl. Com. 169 ;  1 Hawk. P. C. c. 32, § 7.

3. When the allegation is general, as here, the acts complained of, must of themselves, show an offence, as for keeping a house of ill fame, gaming houses, *actual obstructions* in the public highways, rivers, &c.   2 Hawk. P. C. c. 25, § 57 ;  1 Chitty's Cr. Law, 188 ; *People* v. *Sands,* 1 Johns. 78 ;  3 Stark's Ev. Am. ed. 1830, p. 350.

The description of the room, " called a bowling alley" adds no force to the charge, but rather modifies it.

A general charge for a nuisance in keeping a bowling alley for gaming, would not be sufficient.   It falls within the princi-

ples stated, to wit: the facts, and circumstances which constitute it such, must be stated.

It should state that disorderly and idle persons resorted there. The mere keeping a bowling alley without entertaining disorderly persons, for unlawful games, is not an indictable offence.

4. There are no facts or circumstances charged which show it a public or common nuisance.

The charge is, " did procure and suffer *divers persons,* to the jurors unknown, to frequent and come together there, to play at bowls," " in the day time and also in the night."

If the keeping " the room," as we contend, does not constitute the offence alone, does it depend upon the character of the persons who come together there ? Who and what descriptions of persons ? The charge is, " divers persons."

In its most extended sense, " divers," different, *its* common acceptation is, more than one, *not many.* Web. Dictionary.

It relates to the number, and not to the character or description of persons. The mere coming together of more than one, not many persons, indefinite persons, persons neutral as to evil designs, will not make that place a nuisance which otherwise is not.

The indictment not only does not allege the *character* of the persons who came together there, and that they were disorderly persons, but it does not allege that " divers persons" were there for unlawful purposes or practices, but simply to " play at bowls, day and night."

For orderly persons to play at bowls, without disorder, for amusement, not for unlawful purposes, not for money, not gaming, is not unlawful in any sense. And for ought that is alleged in the indictment, the " divers persons," were among the most orderly citizens of the county, who were playing at bowls, simply for amusement and healthful recreation.

5. The indictment should show that he not only kept a " disorderly room," but that *disorderly persons,* persons of bad reputation, *ill-name,* resorted there, and remained there mis-

behaving themselves, practicing unlawful pastime. 1 Russell on Crimes, 300; 4 Black. Com. 127.

6. The mere charging the acts to be " to the common nuisance," &c. is not sufficient. In *People* v. *Sands,* the Court say, " the Court must examine whether the facts charged imply a nuisance."

The acts necessary to constitute the offence, must appear of record, so that the ground, on which the jury proceed may not be matter of conjecture, but be tested by the acts laid in the indictment.

There are no acts charged in the indictment, into the existence of which, and the character of which, the jury were to inquire, and which if found, would constitute the offence. But the jury were left to their own conjectures, without being confined to what was charged in the indictment, as to what acts would constitute the offence of public nuisance.

7. They were told by the Judge, " that they were to judge, from the evidence, (and not from what was alleged and proved,) whether or not, it was such a source of annoyance and disturbance to the neighborhood, as to constitute a public nuisance.

These instructions virtually say to the jury, if in your judgment, " the neighborhood or public" are annoyed or disturbed by the room, then it is a public nuisance, and you need not stop to inquire whether it be proved or alleged, that the room is unlawfully, disorderly kept, or that disorderly persons resort there.

They were told to determine the character of a public act, not offences described, by its degree of annoyance to the neighborhood, without inquiry into the character of the acts which produced the annoyance.

8. There was no proof, " that there had been playing for money or other thing," and there is no charge in the indictment of gaming, or purposes of gaming, and yet the Judge charged the jury, " that if they should find it was a place kept for gaming, that would of itself constitute it a common and public nuisance."

The case finds that the acts complained of, were the assembling of the boys and young men, to roll upon the alley for amusement, and the noises complained of were from the falling of the pins and the rolling of the balls.

The Court should have instructed the jury that this would not constitute it a common and public nuisance, and not have left it to them to determine, " whether it was or not, such a source of annoyance," &c.

These facts were not sufficient to constitute it even a private nuisance, giving a personal remedy.

The " annoyances" complained of, must not be merely imaginary, fancied, and depending upon the notions of the persons complaining, but must be real, operating to some damage; as by infecting the air, rendering it injurious to health; as by exciting constant apprehension of danger.

There is nothing alleged from which the Court can intend the existence of real danger to the citizens and the public.

But another question is, whether defendant had such interest or property in the alley, as would make him chargeable.

The general rule is, that if the indictment be against one for a nuisance, he must be shown to be the owner of the land on which the nuisance exists, and that he erected it or continued it, or in some way sanctioned its erection or continuance.

If his tenant erects or continues it, with his sanction, he, the owner, is liable, on the ground that tenant's acts are the acts of the owner, and is the agent for him. 3 Stark. Ev. Nuisance.

So also the tenant may be indicted, as he, for the time being exercises the rights of the owner, and his acts bind the owner. *People* v. *Townsend*, 3 Hill, 479.

Either or both are liable, upon the principle that they represent a *blended interest*, and the acts of one are conclusive upon either or both.

For the public prosecution proceeds upon the ground that the *ulterior* purpose is the abatement of the nuisance, and hence the proceedure must be against *such as have* the right and interest in the thing complained of. Now the indictment

was against Haines and Erastus Robbins, who are said to keep and maintain, &c.'

The government did not pretend to show that defendant was joint owner with Erastus Robbins, or that he in fact owned jointly with any one or separately. They merely introduced evidence tending to show an interest and occupation.

The defendant proved that he did not, in fact, own it or have interest in it, but that Darius Robbins had a deed of it, subject to mortgage to Stevens.

Now it is not alleged or pretended, that defendant kept and maintained this alley with the sanction of Stevens or Robbins, or that they had any reason to suppose that he was so conducting.

The only capacity in which it was possible for defendant to have been there, from the proof, was that of amusement, without interest in it, or ability to control it, or suppress it.

The instructions of the Court, that if satisfied " that he was in possession and had the use and control of the alleys, either by himself or jointly with others, in either event he would be liable," was erroneous in this; that it did not instruct them they must be satisfied he had the possession, use and control, with the sanction of the owner, and also that it must be a joint possession with the owner, and with others, with the sanction of the owner.

The instructions were calculated to mislead the jury, and it is only upon the supposition that they were misled by them, that you can account for their verdict, upon the proof found in the case, that Darius Robbins owned and controlled the alley, with one Stevens.

No judgment for discontinuance or abatement of the nuisance could be ordered by the Court, for the reason, that the owner of the land upon which the nuisance exists, is not connected with the prosecution, either by himself or his tenant having any interest in it, and no man can be bound or prejudiced by a judicial decision, to which he is not privy.

*Tallman,* Attorney General, for the State.

SHEPLEY, C. J. — The defendant was indicted with another person for keeping a bowling alley for gain and common use.

The first question presented by the bill of exceptions is, whether the offence is sufficiently set forth in the indictment. A motion was made apparently with a design to have the indictment quashed. This was overruled, and the indictment was declared to be sufficient. The presiding Judge was under no obligation to decide such a question before the accused had been found guilty. Then it could be properly presented by a motion in arrest. As such a motion can yet be made, the question may as well be considered and decided.

The indictment contains two counts. Divested of their formal and expletive language the averments in the first count are, that the accused kept a bowling alley for gain, and procured or induced persons to frequent the same to play at bowls in the day and night time, to the great annoyance, damage and common nuisance of the citizens.

An averment, that the acts alleged are to the common nuisance without averments, which, being proved, will show, that the accused had been guilty of causing a nuisance, will not be sufficient. The allegation, that the alley was kept " to the great annoyance and damage" of the citizens, without stating any particular acts that would occasion such annoyance or damage, is so general, that the accused could not be prepared to rebut the charge by proof.

The question therefore on this count is presented, whether the keeping of a bowling alley for gain and common use, as an inducement for persons to play on it in the day and night time, is a common nuisance.

A nuisance has been defined to be " any thing, that worketh hurt, inconvenience, or damage." 3 Bl. Com. 216. Erections made and occupied for certain purposes are by the law regarded as nuisances, without proof of any particular injury. The injury is considered to be inherent. Other erections wholly innoxious in their nature and usual occupation, may become nuisances by being used in such a place or in such a manner,

as to render the enjoyment of life and property in their neighborhood uncomfortable. Among those, which are held to be nuisances *per se* are stages for rope-dancing, for mountebanks, gaming houses and bawdy-houses. The law requires no particular allegations or proofs, that they are injurious to the community. The simple allegation, that such places or houses are kept *ad commune nocumentum*, is sufficient. Among those not regarded as common nuisances, without proof of their improper location or use, may be reckoned the trades of the soap-boiler, tallow-chandler, brewer and tanner. If a bowling alley kept for gain and common use is to be regarded as a common nuisance *per se*, the first count in the indictment is sufficient, otherwise it is not.

Hawkins states, that stages for rope-dancers, and gaming houses, are common nuisances " not only because they are great temptations to idleness, but because they are apt to draw together great numbers of disorderly persons, which cannot but be very inconvenient to the neighborhood." Hawk. P. C. B. 1, c. 75, § 6, 7.

Bowling alleys appear to have been early regarded as analogous in character to stages for rope-dancing, probably because they produced similar results. *Jacob Hall's case,* 1 Mod. 76. Hale, C. J. is reported to have said in that case, " that in the eighth year of Charles the first Noy came into Court and prayed a writ to prohibit a bowling alley erected near St. Dunstan's church, and had it." It appears, that a writ was issued in the case referred to by Lord Hale to abate the bowling alley as a nuisance. 1 Vent. 169.

The " hurt" or injury to the community, which has occasioned bowling alleys kept for gain and common use to be regarded as common nuisances, arises from their tendency to withdraw the young and inconsiderate from any useful employment of their time, and to subject them to various temptations. From their affording to the idle and dissolute encouragement to continue in their destructive courses. Clerks, apprentices and others are induced, not only to appropriate to them hours, which should be employed to increase their

knowledge and reform their hearts, but too often to violate higher moral duties to obtain means to pay for the indulgence. Other bad habits are in such places often introduced or confirmed. The moral sense, the correct principles, the temperate, regular and industrious habits, which are the basis of a prosperous and happy community, are frequently impaired or destroyed. Bowling alleys without doubt may be resorted to by many persons without such injurious results. The inquiry is not what may be done at such places without injury to persons of fixed habits and principles, but what has been in the experience of man, their general tendency and result. The law notices the usual effect, the ordinary result of a pursuit or course of conduct, and by that decides upon its character. It need not be the necessary and inevitable result of a bowling alley kept for gain and common use, that it is thus injurious to the community, to make it a common nuisance. Mr. Justice LITTLEDALE, in the case of *Rex* v. *Moore*, 3 B. & Ad. 184, correctly said, "if it be the probable consequence of his act, he is answerable as if it were his actual object. If the experience of mankind must lead any one to expect the result, he will be answerable for it." But the question was so fully examined and discussed by Mr. Justice COWEN, in the case of *Tanner* v. *The Trustees of Albion*, 5 Hill, 121, that it may be more useful to quote and adopt certain portions of that opinion, than to enter upon a more enlarged discussion of the question.

He says, " so far as I have been able to discover, erections of every kind adapted to sports or amusements having no useful end, and notoriously fitted up and continued with the view to make a profit to the owner, are considered in the books as nuisances.

" The tendency of the alley being well known, it was adjudged to be a nuisance of itself; and a writ accordingly issued to remove it without a trial.

" The nuisance consists in the common and gainful establishment for the purpose of sports having the aptitude and tendency of which Hawkins speaks.

" In general the law is not scrupulous about actual results. It sees, that a building has been erected for at least an idle purpose, the probable consequence of which will be pernicious. It does not stop therefore and call witnesses to prove, that it is so in fact.

" The only argument I have heard urged in excuse for bowling alleys is, that the exercise of the players is conducive to health.    In this respect such alleys have been compared with bath houses.    The answer is, that there are various other kinds of exercise entirely equivalent, and if not, the means of playing with bowls are easily accessible without those public establishments carried on for hire, which the law has denounced as of evil tendency."

If these views are correct, the first count in the indictment is sufficient.

But if that count should be regarded as defective, the second would seem to be sufficient to show, that the alley was a nuisance, because it was used in such a manner as to render the enjoyment of life and property, uncomfortable to those residing in its neighborhood.

It alleges, that the accused erected, continued and used a building for bowling with a bowling alley therein, near the dwellinghouses of divers citizens, to which persons are accustomed to resort to play at bowls in the day and night time, thereby occasioning great noises, damage, annoyances, and becoming and being injurious and dangerous to the comfort of divers individuals and the public.    The only essential and distinguishing allegation in this count is, that great noises were made. ,  The mere fact of occasioning such noises in the night time, to the disturbance of the neighborhood, has been decided to be a nuisance.    *Rex* v. *Smith,* Stra. 704.

The next cause of complaint is, that the jury were instructed " that they were to judge from the evidence whether it was or not such a source of annoyance and disturbance to the neighborhood, and to the public generally, as to constitute it a common and public nuisance."    The objection is, that the jury were not informed, what facts were necessary to be proved to occasion it to be a common nuisance.

If the law had not been stated in the hearing of the jury during the trial, the counsel for the accused might have requested and obtained definite instructions respecting that matter. There is nothing in the instructions which were given, suited to lead the jury to an erroneous conclusion.

The remaining cause of complaint is, that the jury were instructed, if they should be satisfied " that the defendant was the sole or joint owner of them, or that he was in the possession and had the care and control of the alleys by himself, or jointly with others, in either event he would be liable."

Instructions must be considered with reference to the testimony. An owner of a bowling alley, who had not used it or authorized its use for gain and common use, or in such a manner as to occasion noise or disorder, might not be liable for such unauthorized use of it, by another. No such question was presented in this case. The particular error alleged is, that the instructions did not require that the possession and control of the alley should appear to have been with the sanction of the owner."

Surely one, who should obtain possession of property by trespass or disseizin, and use it in such a manner as to occasion it to be a common nuisance, could not interpose the unlawful acts, by which he obtained and held possession, as an excuse or justification of his subsequent unlawful conduct.

It is further insisted, that some greater interest than that arising out of possession and control of the property should have been required to enable the Court on conviction, to abate the alley as a nuisance according to the provisions of the statute. chap. 164, § 7.

The case cited by the counsel shows, that a tenant may be liable to indictment and conviction for such a use of property.

The Court is authorized by the statute to punish by fine only; and may cause the nuisance to be abated. It is not required to do so, when the interests of strangers to the proceedings might be improperly affected.

*Exceptions overruled and case remanded.*