CITY OF KANSAS, Appellant, v. L. F. McALEER, Respondent.

Kansas City Court of Appeals, June 13, 1888.

1. CHARTER OF KANSAS CITY—PROVISIONS OF AS TO NUISANCES.—The City of Kansas not only has the power to abate nuisances, but by its charter has the extraordinary power to define and declare what is a nuisance, which is broader than the general authority to abate. But neither will justify a wanton declaration that an act or avocation is a nuisance which unquestionably is not ; or an unwarrantable invasion of private rights.

2. —— OWNERSHIP IN PROPERTY SUBJECT TO RESTRICTIONS—CASE ADJUDGED.—Every right, from an absolute ownership in property down to a mere easement, is purchased and holden subject to the restriction that it shall be so exercised as not to injure others. As a city extends, offensive trades must be removed to vacant grounds beyond the immediate neighborhood of the residences of citizens. Nor will it avail to show that the objectionable machine used in this case was of the most modern kind, and as complete as possible of its kind.

APPEAL from Jackson Criminal Court, HON. HENRY P. WHITE, Judge.

*Reversed and remanded.*

The case is stated in the opinion.

R. W. QUARLES and W. A. ALDERSON, for the appellant.

I. The running of a rock-crushing machine, at the place charged in the information, constituted a nuisance ; and the ordinance under which defendant was prosecuted—the violation of which he admitted—is valid. Charter Kansas City, art. 3, sec. 1, subdivs. 5, 33 ; Acts 1879, pp. 204, 207 ; *St. Louis v. Frein,* 9 Mo. App. 590 ; *Leete v. Pilgrim Society,* 14 Mo. App. 590 ; *St. Louis v. Stern,* 3 Mo. App. 48 ; *State ex rel. v. Beattie,* 16 Mo. App.

131; *Catlin v. Valentine,* 9 Paige (N. Y.) 575; *Coker v. Birge,* 9 Ga. 425; *Narrows v. Thomas,* 51 Me. 563; *Inhabitants v. Mayo,* 109 Mass. 315; *Grady v. Widner,* 46 Ala. 381; *McKeon v. Lee,* 51 N. Y. 308; *In re Lead Co.,* 96 Pa. St. 116; s. c., 42 Am. Rep. 534, and note; *Dittman v. Repp,* 50 Md. 518; s. c., 33 Am. Rep. 325; *Emory v. Powder Co.,* 22 S. C. 476; s. c., 53 Am. Rep. 730; *Hutchinson v. Smith,* 63 Barb. 251; *Ross v. Butler,* 19 N. J. Eq. 294; Wood's Law of Nuis. [2 Ed.] secs. 1, 495, 504, 505, 506, 507, 508, 509, 513, 543, 545, 743, 744, and 745; Tied. Lim. Pol. Pow., secs. 1, 122c, 104; *Railroad v. Husen,* 95 U. S. 465; *Butchers' Co. v. Crescent City Co.,* 111 U. S. 746; *Barlier v. Connolly,* 113 U. S. 27; *Soon Hing v. Crowley,* 113 U. S. 703; Dill. Mun. Corp. [3 Ed.] secs. 379, 396, 407; Horr and Demis' Mun. Pol. Ords., secs. 250, 255.

II.   It does not avail the defendant anything that he had placed his rock-crusher at the place charged in the information and was operating it there before the ordinance was in force. *State ex rel. v. Board of Health,* 16 Mo. App. 8; *Hayden v. Tucker,* 37 Mo. 214; *Harmon v. Chicago,* 110 Ill. 400; s. c., 51 Am. Rep. 698; *Railroad v. Lake View,* 105 Ill. 207; *Commonwealth v. Fenton,* 139 Mass. 195; *Campbell v. Seaman,* 63 N. Y. 568, 584; *Baker v. Boston,* 12 Pick. 184, 193; *Coates v. Mayor,* 7 Cow. 585, 603; *Fertilizing Co. v. Hyde Park,* 97 U. S. 656; *Weir's Appeal,* 74 Pa. St. 230; *Slaughter House Cases,* 16 Wall. 36, *Taylor v. The People,* 6 Park. Cr. Rep. 347, 352.

III.   It is no answer to the charge in the information, that "the defendant", to quote from the special finding of facts by the trial court, "in preparing his machine has made use of the most modern, improved, and approved appliances, thereby reducing its offensiveness and the annoying character of the machine to the minimum." Wood's Law of Nuis. [2 Ed.] sec. 552, and cases cited; *State v. Ball,* 59 Mo. 321; *Pennoyer v. Allen,* 14 N. W. Rep. 609; *Cooper v. Randall,* 53 Ill. 24.

No brief for the respondent.

ELLISON, J.—Defendant was convicted before the city recorder of Kansas City on an information in which it was charged that he, "within the corporate limits of the said City of Kansas, and in and upon a block wherein there were at said times three residences or dwellings occupied, did then and there unlawfully cause, allow, commit and maintain a nuisance by running and operating a rock-crushing machine." The section of the ordinance which the defendant was charged with violating, is as follows: "Section 1: The running or operating of a rock-crushing machine in any block or square wherein there are three or more residences or dwellings occupied, is declared to be a nuisance, and is by this ordinance prohibited."

That portion of the charter on which this ordinance is founded is as follows:

"The common council * * * shall have power within the jurisdiction of the city, by ordinance:

* * * * * * * * * *

"Fifth. To make regulations to secure the general health of the inhabitants, to prevent, abate and remove nuisances within the city and within one mile thereof, and to punish the authors thereof, by penalties, fine and imprisonment; to define what shall be deemed nuisances, and to direct the summary abatement thereof.

* * * "

The defendant appealed to the criminal court of Jackson county, where he contended that the ordinance under which the complaint was drawn is invalid. The criminal court, a jury having been waived, sustained such contention and discharged the defendant, from which judgment of the court, the City of Kansas appealed.

Defendant admitted at the outset, "that he ran a rock-crushing machine in the block at the times charged in the information where there were at such times, three

occupied dwelling-houses." This was tantamount to a plea of guilty, unless defendant intended to supplement the admission by showing the ordinance to be wholly unreasonable and oppressive. The city, however, assumed the burden of showing the act to be a nuisance in fact, without reference to the municipal declaration to that effect. This was an unnecessary burden.

I. A nuisance is defined by Blackstone to be "anything that worketh hurt, inconvenience or damage." One of the chief functions of the police power is to regulate and abate nuisances. This power, though inherent in every state, is not easily defined; though circumscribed, it is nearly impossible to say, by what specific line. It belongs primarily to the state, but may be, and is, in this country, in large part, delegated to municipalities. Its exercise extends to the entire property and business interests within their jurisdictions. And it is in respect to nuisances that this power, if properly applied, does the most good, but if improperly, will work the greatest harm. The City of Kansas not only has the power to abate nuisances, but by its charter, has the extraordinary power to define and declare what is a nuisance; this is broader than general authority to abate. But neither will justify a wanton declaration that an act or avocation is a nuisance which *unquestionably* is not. "Much must necessarily be left to the discretion of the municipal authorities, and their acts will not be judicially interfered with unless they are manifestly unreasonable and oppressive, or unwarrantably invade private rights, or clearly transcend the po wers granted to them.' 1 Dillon Mun. Corp., sec. 379. Whether such ordinance is unreasonable and, therefore, invalid, is a question for the court and not a jury, *Ib.*, sec. 327. In determining whether it be reasonable, the court should not substitute its discretion for that of the municipal legislation. The power of the court in this respect, should not be hastily or incautiously exercised. *Fisher v. Harnsberg*, 2 Grant (Pa.) 291; *Commonwealth v. Robertson*, 5 Cush. 438; *City of St. Louis v. Weber*, 44 Mo-

547. "In doubtful cases, where a thing may, or may not, be a nuisance, depending upon a variety of circumstances requiring judgment and discretion on the part of the town authorities in exercising their legislative functions, under a general delegation of power like the one we are considering (to declare and define what shall be a nuisance), their action, under such circumstances, would be conclusive of the question." *Railroad v. Lake View*, 105 Ill. 207. The case should have been considered in accordance with this view of the law and if so considered, there is nothing in the evidence justifying the court in declaring the ordinance invalid.

II. That the machine was in operation at the place charged, before the passage of the ordinance, is of no avail as a defence. *Hayden v. Tucker*, 37 Mo. 214; *Campbell v. Seaman*, 63 N. Y. 568; *Wells' appeal*, 74 Pa. St. 230; *Coates v. Mayor*, 7 Cowen, 585. In the case last cited, the charter of New York City gave authority to pass by-laws to prevent the interring of dead bodies within the city. In 1813 the common council passed an ordinance forbidding, under penalty of two hundred and fifty dollars, any person from burying dead, within certain limits, which included Old Trinity Churchyard. After the passage of this ordinance, defendant Coates buried a body in such yard and was prosecuted for the penalty prescribed by the ordinance. His plea was that the place where the interment took place was a part of a close called, Trinity Churchyard, situate in the first ward of the City of New York, which was patented by William III., King of Great Britain, in 1697, and whereby divers persons were constituted a body corporate by the name of " The Rector and Inhabitants of the City of New York, in communion of the Protestant Episcopal Church of England ;" that such letters patent confirmed the churchyard to the corporation and to its successors forever, as and for a cemetery, with the rights, customs, fees, perquisites, profits, etc., as the same were then in the possession of the corporation ;

that immediately after the grant, the land was appropriated as a burying-place for the interment of dead bodies at and for certain fees, perquisites, and profits then and there charged and received ; that defendant was a sexton of Trinity Church, and as such, had charge of the ground, and by the leave and license of said corporation, buried the dead body. This plea was held bad, though it set up a legal use and profit of the property for more than a century before the ordinance was passed. The court held that it made no difference that the right was purchased previous to the passage of the by-law. That every right, from an absolute ownership in property, down to a mere easement, is purchased and holden subject to the restriction, that it shall be so exercised as not to injure others. Though at the time it be remote and inoffensive, the purchaser is bound to know at his peril that it may become otherwise by the residence of many people in its vicinity and that it must yield to by-laws for the suppression of nuisances.

And so it was said in *Weir's appeal, supra*, that " carrying on an offensive trade for any number of years in a place remote from buildings and public roads, does not entitle the owner to continue in the same place after houses have been built and roads laid out in the neighborhood, to the occupants of which and travellers upon which, it is a nuisance. As the city extends, such nuisances should be removed to the vacant grounds, beyond the immediate neighborhood of the residences of the citizens. This, public policy, as well as the health and comfort of the population of the city, demand."

III. It follows from what has been said in reference to the right of the corporation to declare and define what shall be deemed a nuisance, that the fact that defendant in preparing his machine made use of the most modern appliances and thereby reduced its offensiveness and annoying character to the minimum is no defence to the charge. *State v. Ball*, 59 Mo. 321. The defendant is not charged with not operating his machine

in the best manner he could and in the most approved way, but the complaint is in operating it in a forbidden place.

The result is, that we will reverse the judgment of the criminal court and remand the cause with directions to proceed in accordance with this opinion. All concur.