## In re W. C. JONES.

No. A-724.    Opinion Filed June 8, 1910.

(109 Pac. 570.)

1. **MUNICIPAL CORPORATIONS—Powers—Scope.** The powers of a municipal corporation are only those granted by express words; those fairly implied in, or incident to, the powers expressly granted; and those indispensable to the declared objects and purposes of the incorporation.

2. **NUISANCE—Power to Declare—Billiard and Pool Halls.** Within constitutional limitations the Legislature has the power to declare what shall constitute a nuisance; and in the exercise of that power it is not restricted to declaring only such things a nuisance as were so at common law or are so per se. It may declare billiard and pool halls and bowling alleys nuisances and forbid them.

3. **SAME — Delegation of Power to Municipal Corporations.** The Legislature may lawfully delegate to municipal corporations, to be exercised within their corporate boundaries, the power to declare what shall constitute a nuisance and to prevent the same.

4. **SAME—Scope of Municipality's Power.** A statutory grant of power to a municipality to declare what shall constitute a nuisance does not empower the municipality to declare a thing a nuisance which is clearly not one; but it does empower the municipality to declare anything a nuisance which is so per se, or which by reason of its location, management or use, or of local conditions and surroundings, may or does become such within the common law or statutory definition of a nuisance, or those things which in their nature may be nuisances, but as to which there may be honest differences of opinion in impartial minds.

5. **SAME—Discretion of Municipality.** Where a thing may or may not be a nuisance, depending upon its location, management or use, and the conditions existing in the municipality, thus requiring judgment and discretion in determining the matter, the determination of the question by a municipality having power to declare what shall be a nuisance is conclusive upon the courts.

6. **NUISANCE—What Constitutes.** Under section 4751 of Snyder's Comp. Laws and by the common law, anything which annoys, injures or endangers the comfort, repose, health or safety of others, is a nuisance.

7.   **SAME—Billiard and Pool Rooms.** The operation of a billiard hall or a pool room for gain is not recognized by the law as necessary or useful, or as a business which a person has an inherent right to engage in; and a municipal ordinance declaring them a nuisance and forbidding them, passed under statutory authority to declare what shall constitute a nuisance and to prevent the same, is valid.

8.   **APPEAL — Recitals in Judgment — Conclusiveness.** Where a judgment of a justice of the peace recites that after duly considering the "evidence as produced and confessed" the court finds the defendant guilty, in the absence of an affirmative showing that no evidence was introduced, it will be presumed that evidence was taken.

(Syllabus by the Court.)

### Original Proceeding by Habeas Corpus.

The Incorporated Town of Eldorado, Oklahoma, passed an ordinance entitled "An ordinance describing what shall constitute a public nuisance; prescribing the punishment for maintaining the same, and providing methods for the abatement thereof," by which ordinance it was declared in substance that all billiard halls, poolrooms, or other places where any billiard, pool or combination billiard and pool table or tables are or may be kept or operated for hire, shall be deemed public nuisances, and making it a misdemeanor punishable by a fine of $25.00 for any person, either as owner, servant or employee, to open, establish, carry on or maintain the same, or to assist in so doing, within the corporate limits of said town, and making each day's continuance thereof a separate offense. This ordinance became effective on January 1, 1910.

On January 25, 1910, the petitioner W. C. Jones was convicted before the town justice of Eldorado of violating said ordinance by running a poolroom for hire in said town, and he was sentenced to pay a fine of $25.00 and cost, failing and refusing to pay which he was ordered committed to the town jail to be there imprisoned until said fine and cost were liquidated, allowing him $2.00 per day for each day of his imprisonment. Being in custody under said commitment, he applied to this court for a writ of *habeas corpus* to the end that he be released. He contends that his imprison-

ment is illegal for two reasons: first, because the ordinance in question is void for want of power in the town trustees to enact the same; and second, because the judgment of conviction is void in that it was rendered without any testimony being taken or produced, and without any plea of guilty being entered by petitioner. The writ was issued and served, and return thereto was made setting forth the ordinance in question, the complaint made against petitioner in the justice court, the justice's record of the trial and judgment, and the order of commitment under which petitioner is held; and upon these the cause came on for determination. Writ discharged and petitioner remanded to custody.

*J. T. Shive* and *Henry Bulow,* for petitioner.—Citing 1 A. & E. Enc. L. 89; *In re Sam Kee,* 31 Fed. 680; *Hennessey v. St. Paul,* 37 Fed. 565; *In re Cribben,* 5 Okla. 379; 20 A. & E. Enc. L. 1140; *State v. Young,* 3 Kan. 445; *Whiting v. West Point,* 88 Va. 905.

*W. C. Austin* and *Shartel, Keaton & Wells,* for respondent. No brief reached the reporter.

RICHARDSON, JUDGE.   It is contended by petitioner that the ordinance in question is void, for the reason that the Incorporated Town of Eldorado had no statutory grant of power to pass the same; that municipal corporations are creatures of the Legislature, and can exercise only such powers as are expressly conferred by their charter or by statute; that a grant of power to them must be strictly construed, so that they take nothing by implication; and that they have no power to declare anything a nuisance unless it is so *per se.*

It is true that a municipal corporation has no power except that which is specifically granted or necessarily implied. Dillon on Municipal Corporations defines the powers of such corporations as, "First, those granted in express words; second, those necessarily or fairly implied in, or incident to, the powers expressly granted; third, those essential to the declared objects and purposes of the corporation, not simply convenient, but indispensable." And he also states that, "Any fair, reasonable doubt concerning the ex-

istence of power is resolved by the court against the corporation, and the power is denied. Of every municipal corporation, the charter or statute by which it was created is its organic act. Neither the corporation nor its officers can do any act or make any contract or incur any liability not authorized thereby. All acts beyond the scope of the powers granted, are void." The foregoing statements of the law have been quoted, approved and adopted by courts innumerable; and constitute perhaps as clear, accurate, and succinct a rule for determining the power and the limitations upon the power of municipal corporations as could be formulated. Bearing this rule in mind, then, as our guide, let us examine our statutes and see if such power as that attempted to be exercised by the passage of this ordinance is granted to incorporated towns in this state.

Cities of the first class are by express statute authorized "to restrain, prohibit and suppress tippling shops, billiard tables, bowling alleys, houses of prostitution, and other disorderly houses." Section 683, Snyder's Comp. Laws. But no such express grant of power is given to incorporated towns and villages so far as billiard halls and bowling alleys are concerned. It is provided by section 847 of Snyder's Comp. Laws with respect to towns and villages that, "The board of trustees shall have the following powers, namely: 4th, to declare what shall constitute a nuisance, and to prevent, abate and remove the same, * * *." And it is clear that if the town of Eldorado had the power to enact the ordinance in question that power must be found in the 4th sub-division of the section just quoted; and from the title and wording of the ordinance it is also clear that it was from this source that the trustees claimed the power which they sought to exercise.

Within constitutional limitations the Legislature has the power to declare what shall constitute a nuisance; and in the exercise of that power it is not restricted to declaring only such things a nuisance as were so at common law or are so *per se*. Joyce on the Law of Nuisances, sections 81, 82 and 83; *Ripley v. State,*

4 Ind. 264; *Train v. Boston Disinfecting Co.,* 144 Mass. 523, 11 N. E. 929, 59 Am. Rep. 113; *Fisher v. McGirr,* 1 Gray (Mass.) 1, 61 Am. Dec. 381; *Moses v. United States,* 16 App. D. C. 428, 50 L. R. A. 532; *Lawton v. Steele,* 119 N. Y. 226, 23 N. E. 878, 7 L. R. A. 134, 16 Am. St. Rep. 113; *Mugler v. Kansas,* 123 U. S. 623, 31 L. Ed. 205. It may declare billiard and pool halls and bowling alleys nuisances and forbid them; that is a legitimate exercise of the police power. *State v. Noyes,* 30 N. H. 279; Freund on Police Power, sec. 193.

Now, the Legislature may delegate this power to municipal corporations to be exercised within their corporate boundaries. "After repeated challenge of municipal authority to exercise the police power, on the ground that it is a sovereign power and therefore non-delegable, the doctrine is firmly established and now well recognized that the Legislature may expressly or by implication delegate to municipal corporations the lawful exercise of police power within their boundaries; the measure of power thus conferred is subject to legislative discretion." 28 Cyc. 693, and the many cases there cited. And Judge Freeman states in his note to *Robinson v. Mayor of Franklin,* 34 Am. Dec. 625, 632, that, "Discretionary powers granted to a municipal corporation, to be exercised according to its judgment as to the necessity or expediency of a given measure, vests the corporation, within the sphere of the powers delegated, with a control as absolute as the Legislature would have possessed if it had never delegated the powers, and the discretion of the municipality in respect to the exercise of the powers granted is as wide as that possessed by the government of the state." And in support of the statement he cites the following cases: *Gas Co. v. Des Moines,* 44 Iowa, 509, 24 Am. Rep. 56; Dillon on Munic. Corp., sec. 308, (3d Ed.) ; *Ex parte Burnett,* 30 Ala. 469; *Osborne v. Mayor,* 44 Id. 498; *Ex parte Wall,* 48 Cal. 321, 17 Am. Rep. 425; *Covington v. East St. Louis,* 78 Ill. 550; *Indianapolis v. Gas Light and Coke Co.,* 66 Ind. 402; *Perdue v. Ellis,* 18 Ga. 591; *Kniper v. Louisville,* 7 Bush (Ky.) 601; *Mayor*

*v. Morgan* (La.) 7 Mart. 5, 18 Am. Dec. 234; *Portland v. Water Co.,* 67 Me. 137; *Heland v. Lowell,* 5 Allen (Mass.) 108; *State v. Dwyer,* 21 Minn. 513; *St. Paul v. Coulter,* 12 *Id.* 46; *Taylor v. Carondelet,* 22 Mo. 110; *Metcalf v. St. Louis,* 11 *Id.* 103; *State v. Noyes,* 30 N. H. 288; *Howe v. Plainfield,* 37 N. J. L. 146; *Presb. Church v. New York,* 5 Cow. 541; *Markle v. Akron,* 14 Ohio, 590; *Respub. v. Duquet,* 2 Yeates (Pa.) 500; *State v. Williams,* 11 S. C. 291; *Trigally v. Memphis,* 6 Coldw. (Tenn.) 389; *Milne v. Davidson,* 5 Mart. (La.) 409; 16 Am. Dec. 189, and note.

Now, turning again to the statute under consideration, we find that the board of trustees of incorporated towns are expressly empowered to declare what shall constitute a nuisance, and to prevent the same. This delegation of authority is apparently as broad and comprehensive as the Legislature could make it, and according to some decisions grants to a municipality the power to declare anything local in its character and operation a nuisance which the Legislature could constitutionally include in a statutory definition of the word, and thus leaves the municipal power in this respect limited only by the state and federal Constitutions. But according to the greater weight of authority this grant empowers a municipality to declare only those things a nuisance which are so *per se,* or which by reason of their location or use may become such within the common law or statutory definition of a nuisance, or those things "which in their nature may be nuisances, but as to which there may be honest differences of opinion in impartial minds"; and according to all the cases it does not and could not authorize a municipality to declare that a nuisance which is clearly not so. *Laugel v. Bushnell,* 197 Ill. 20, 58 L. R. A. 266; *North Chicago City Ry. Co. v. Town of Lake View,* 105 Ill. 207, 44 Am. Dec. 788; *Harmison et al. v. City of Lewistown,* 153 Ill. 313; *Kansas City v. McAleer,* 31 Mo. App. 433; *Glucose Refining Co. v. City of Chicago,* 138 Fed. 209; *State v. Iams* (Neb.) 111 N. W. 604, 11 L. R. A. (N. S.) 736. The real point of division among the authorities is whether under this grant of power a municipality may en-

large the common law or statutory definition of a nuisance, or is restricted to declaring only those things a nuisance which in their nature, character and tendencies come within the established definition of the word. We do not find it necessary to determine this question; for where under the statutory definition a thing may or may not be a nuisance, depending upon its location, management or use, or upon the conditions existing in the municipality, thus requiring the exercise of judgment and discretion in determining the matter, it is held that under a grant of power such as is contained in this statute the action of the board of trustees, who reside in the town and are familiar with local conditions and surroundings, and who are presumed to have investigated and considered the matter in all its phases, will be conclusive upon the courts. Thus in *North Chicago City Ry. Co. v. Town of Lake View, supra,* where it was held that under a statutory grant of authority to define, declare and prevent nuisances, a municipality might forbid the using of steam as a motive power on a public street, it was said:

"We do not at all question the general proposition, which has been argued with so much elaboration by appellant's counsel, that under a general grant of power over nuisances, like the one in question, town authorities have no power to pass an ordinance declaring a thing a nuisance which in fact is clearly not one. The adoption of such an ordinance would not be a legitimate exercise of the power granted, but on the contrary, would be an abuse of it. But in doubtful cases, where a thing may or may not be a nuisance, depending upon a variety of circumstances requiring judgment and discretion on the part of the town authorities in exercising their legislative functions, under a general delegation of power like the one we are considering, their action, under such circumstances, would be conclusive of the question."

The same doctrine was adhered to in *Harmison et al. v. Lewistown,* 153 Ill. 313, where it was held that a city or village might by ordinance forbid slaughter-houses within its corporate limits. The syllabus of that case is as follows:

"Under a general power over nuisances, town authorities cannot declare a thing a nuisance which is clearly not one; but if the

thing is of such character that it might or might not be a nuisance, depending upon circumstances, the action of such authorities, in the exercise of their legislative functions, will be conclusive."

In *Kansas City v. McAleer,* 31 Mo. App. 433, Justice Ellison announces the same rule, quotes from *North Chicago City Ry. Co. v. Town of Lake View* with approval, and holds that Kansas City, having power to define and declare what shall constitute a nuisance and to prevent the same, may forbid the running of a rock-crushing machine on any block within the corporate limits where there are as many as three residences. See also *Laugel v. Bushnell, supra.* The same rule is announced by Judge Kohlsaat in *Glucose Refining Co. v. City of Chicago,* 138 Fed. 209, and he cites in support thereof Dillon on Municipal Corporations, sec. 379; *N. Chicago City Ry. Co. v. Lake View, supra; Roberts v. Ogle,* 30 Ill. 459, 83 Am. Dec. 201; *Baumgartner v. Hasty,* 100 Ind. 575, 50 Am. Rep. 830; *State v. Heidenhain,* 42 La. Ann. 483, 7 South. 621; *Walker v. Jameson,* 140 Ind. 598, 37 N. E. 402, 39 N. E. 869, 28 L. R. A. 679, 683, 49 Am. St. Rep. 222; *Monroe v. Gerspach,* 33 La. Ann. 1011; *Gundling v. Chicago,* 176 Ill. 349, 52 N. E. 44, 48 L. R. A. 230; *Cincinnati v. Miller,* 11 Ohio Dec. 788; *People v. Detroit White Lead Works,* 82 Mich. 472, 46 N. W. 735, 9 L. R. A. 722; *People v. Lewis,* 86 Mich. 276, 49 N. W. 140. In *Baumgartner v. Hasty,* 100 Ind. 575, 50 Am. Rep. 830, the court said:

"We are not unmindful of the rule that a municipal corporation has no power to treat a thing as a nuisance which cannot be one; but while we recognize this rule, we also recognize the equally well settled rule that it has the power to treat as a nuisance a thing that from its character, location and surroundings, may and does become such. In discussing this general subject it was said, in a recent case: 'But in doubtful cases, where a thing may or may not be a nuisance, depending upon a variety of circumstances requiring judgment and discretion on the part of the town authorities in exercising their legislative functions, under a general delegation of power like the one we are considering, their action, under such circumstances, would be conclusive of the question.' North Chicago City Ry. Co. v. Town of Lake View, 105 Ill. 207; 44 Am.

4 Cr.—6

Rep. 788. The chancellor, in the course of a discussion of the question in the famous case of *Hart v. Mayor,* etc., 3 Paige, 213, said: 'It therefore becomes necessary, in all populous towns and crowded harbors, to regulate such matters by police ordinances. And public policy requires that the corporation of the place, or conservators of the port, should not be disturbed in the exercise of those powers, unless they have clearly transcended their authority.' "

See also *Walker v. Towle,* 156 Ind. 639, 53 L. R. A. 749; *Chicago v. Gunning System,* 214 Ill. 628, 70 L. R. A. 230; *St. Paul v. Haugbro* (Minn.) 66 L. R. A. 441; *Ex parte Cheney,* 90 Cal. 617; *Waters Pierce Oil Co. v. Town of Iberia,* 47 La. Ann. 863.

Now, under our statute (sec. 4751, Snyder's Comp. Laws), and by the common law, anything which annoys, injures or endangers the comfort, repose, health or safety of others, is a nuisance. And who can say that a public billiard hall or poolroom operated for gain in a small town may not through its management or use, or on account of local conditions and surroundings, become a nuisance, or that it is not a thing "which in its nature may be a nuisance, but as to which there may be honest differences of opinion in impartial minds?" Bowling alleys, tenpin alleys and stages for rope dancing were held at common law to be nuisances *per se.* 1 Hawk. P. C. by Curwood, c. 32, sec. 6; *Jacob Hall's case,* 1 Mod. 76, 2 Keb. 846. In *Tanner v. Trustees of Albion,* 5 Hill (N. Y.) 121, 40 Am. Dec. 337, it is held that a ten-pin alley kept for gain is a nuisance at common law, and may be prohibited by a municipal corporation under a charter authorizing it to make by-laws relative to nuisances, although the printed rules of such alley posted up therein prohibited all betting and the attendance of minors. In the opinion the court said:

"Establishments of this kind in populous communities are, at best, and even when used without hire, very noisy, and have a tendency to collect idle people together and detain them from their business. When built and kept on foot for gain, the owner is interested to invite and procure as full an attendance as possible, day after day; and for this purpose temptations beyond mere amuse-

ment are often resorted to, such as drinking and gaming. So far as I have been able to discover, erections of every kind adapted to sports or amusements, having no useful end, and notoriously fitted up and continued with the view to make a profit for the owner, are considered in the books as nuisances. Not that the law discountenances innocent relaxation; but because it has become matter of general observation, that, when gainful establishments are allowed for their promotion, such establishments are usually perverted into nurseries of vice and crime. Common stages for rope-dancers have been adjudged nuisances at the common law; 'not only,' says Hawkins, 'because they are great temptations to idleness, but also because they are apt to draw together great numbers of disorderly persons, which can not but be very inconvenient to the neighborhood': 1 Hawk, P. C., by Curwood, c. 32, sec. 6 * * * I mention common stages for rope-dancing, because bowling-alleys were long since held to stand on the same footing: *Jacob Hall's Case*, 1 Mod. 76. Hall, a rope-dancer, had erected a stage, or was about erecting one, at Charing Cross, which the Court of King's Bench pronounced to be a nuisance. Hale, C. J., mentioned as a precedent, 'that in the eighth year of Charles I., Noy came into court and prayed a writ to prohibit a bowling alley erected near St. Dunstan's Church, and had it.' In the report of *Hall's Case*, in 2 Keb. 846, Chief Justice Hale is represented as saying that 'Noy prayed a writ to remove a bowling alley; and had it, without any presentment at all.' Thus we see Hawkins is sustained by the highest authority in saying that such places can not but be nuisances.

"The tendency of the alley being well known, it was adjudged to be a nuisance of itself; and a writ accordingly issued to remove it without any trial; Now this is not because rope dancing or playing at nine-pins, or any other game with bowls is a mischief; nor that being a spectator at a rope dance is censurable in the least. Such acts are not nuisances. In themselves they are entirely innocent. The nuisance consists in the common and gainful establishment for the purpose of sports, having the aptitude and tendency of which Hawkins speaks; not that this always produces the consequences of which he complains, but because there is imminent danger of its doing so."

This decision was followed in *Updike v. Campbell*, 4 E. D. Smith (N. Y.) 570, where it was held that a contract leasing cer-

tain premises for the purpose of conducting a bowling alley therein was void, because the leasing was for an illegal purpose. And *State v. Haines,* 30 Me. 65, holds the running of a bowling alley an indictable nuisance, and says that it was such at common law. And we see no distinction in principle between a bowling alley and a billiard hall. We do not desire to be understood, however, as holding that billiard halls and bowling alleys are nuisances *per se.* There are plenty of modern decisions to the effect that they are not, and with them we are in entire accord. We cite these cases merely for the purpose of showing how they were regarded by the common law, and the differences of opinion that exist even among the courts in regard to the matter. That they may become nuisances, however, from the manner in which they are conducted, managed or used, from the character and conduct of the people who frequent them, or on account of local conditions or surroundings, no one will deny. They are not recognized as necessary or useful; no one has an inherent right to engage in that business, and the business is subject to regulation or absolute prohibition by the state or its duly authorized agencies.

The case of *Ex parte Murphy* (Cal.) 97 Pac. 199, is a case very like the one at bar. Section 11, article 11, of the Constitution of California provides that, "Any county, city, town or township may make and enforce within its limits all such local, police, sanitary and other regulations as are not in conflict with general laws." Under this provision the City of South Pasadena passed an ordinance in the exact words of the ordinance of Eldorado now in question. Murphy was convicted of violating the ordinance, and made application to the Court of Appeals for a release by writ of *habeas corpus,* contending that the ordinance was void in that poolrooms are not a nuisance *per se,* and that it was not within the power of the board of trustees of Pasadena to enact the ordinance. The court in holding the ordinance valid said:

"We may concede at the outset that the business of conducting a public billiard hall and poolroom is not *per se* a nuisance. In the case of *Ex parte Meyers* (Cal. App.) 94 Pac. 870, this

court, in considering the validity of 'an ordinance prohibiting minors from visiting * * * publc billiard and pool rooms * * *' said: 'That a billiard hall is immoral *per se* because it is public will hardly be contended by any one.' Petitioner insists that, unless the business is held to be immoral, or a nuisance *per se*, it is not subject to the exercise of the city's police power to the extent that it may be prohibited. His contention is that billiard halls and poolrooms fall within that class of cases, the conduct of which might, by reason of the character of the business, prove obnoxious or injurious to health, or affect the comfort and welfare of others, such as laundries, tanneries, and soap factories; that as to those the power of a municipality is to regulate only. This is true as to that class of business recognized as necessary and useful employments, but the character of which renders their operation obnoxious to the health, welfare, or comfort of others in the community. The question of the reasonableness of ordinances regulating the conduct of such business, and excluding their operation from, or confining it to, certain prescribed limits, as well as the uniform operation of the same, is always a proper subject for judicial inquiry. Such avocations being necessary and useful, the citizen, under proper restrictions, has a fundamental right to engage therein. *Ex parte Drexel,* 147 Cal. 763, 82 Pac. 429, 2 L. R. A. (N. S.) 588. When dealing with a nonuseful calling, the power of the municipality is much broader. The citizen possesses no inherent right to conduct for profit a public place intended purely for the amusement of its patrons, the tendency of which is immoral or vicious. In all such cases the question arises, what is the effect of the conduct of the business upon the morals and public welfare of the community. 'That a public pool and billiard hall,' says petitioner's counsel, 'is a proper subject for police regulation is not denied,' and concedes that 'stringent rules undoubtedly may be enacted to regulate the said business.' Referring again to the case of *Ex parte Joseph Meyers, supra,* wherein this court held that a poolroom was not *per se* a nuisance, it was said: 'That it may become such by the presence of the professional billiardist and gambler, ready to fleece the unwary and to inculcate the gambling habit in the youths of the city, must be admitted.' In the case of *Tarkio v. Cook,* 120 Mo. 1, 25 S. W. 202, 41 Am. St. Rep. 678, it is said: 'Public billiard halls are regarded by many as vicious in their tendencies, leading to

idleness, gambling, and other vices.' In *Goytino, v. McAleer et al.,* 4 Cal. App. 655, 88 Pac. 991, Mr. Justice Allen, expressing the views of this court, said: 'Nor can it be said that as ordinarily, if not invariably, conducted, such business might not within the limits of reasonable probability be attended with uses injurious to the public peace and morals.' 'Any practice or business, the tendency of which as shown by experience is to weaken or corrupt the morals of those who follow it, or to encourage idleness instead of habits of industry, is a legitimate subject for regulation or prohibition.' *Ex parte Tuttle,* 91 Cal. 589, 27 Pac. 933; *Ex parte Lacey,* 108 Cal. 326, 41 Pac. 411, 38 L. R. A. 640, 49 Am. St. Rep. 93; *State v. Thompson,* 160 Mo. 333, 60 S. W. 1077, 54 L. R. A. 950, 83 Am. St. Rep. 468. It thus appears that a public billiard hall and poolroom may, by reason of its environment or conditions existing in some communities, constitute a menace and danger to the morals and well-being of the citizens thereof; and it is therefore a subject for regulation or absolute prohibition, notwithstanding the fact that it is not a nuisance *per se;* the right of the city depending upon a question of fact, the existence of which it is conclusively presumed the board of trustees has properly passed upon, the courts cannot go behind such finding. *Ex parte Shrader,* 33 Cal. 279. Regulation measures, not extending to the stringency of prohibiton, might afford adequate protection in some communities, while in others conditions might exist by reason of which the public welfare demand the absolute suppression of the business. In all cases, however, the extent to which the power shall be exercised is a matter for the legislative body of the municipality to determine."

The Supreme Court of Kansas in the case of *Burlingame v. Thompson,* 74 Kan. 393, sustaining an ordinance prohibiting the maintenance and operation of pool tables for hire in a city of the third class, said:

"Many games and practices may be detrimental to the welfare of a community which are unaccompanied by boisterousness and cannot be classed with nuisances of the disturbing kind. Some of the most enticing are reported as 'gentlemen's games,' in playing which the nicest decorum is observed. So the constant tendency to become disorderly may be but one of the faults of the small-town poolroom. It may be vicious and not be loud. The Supreme Court of Nebraska has said that a poolhall in a village is

apt to degenerate into a trysting place for idlers and a nidus for vice.  (*Morgan v. State,* 64 Neb. 369. 90 N. W. 108.)"

They are evidently so regarded by the lawmaking power in our state, for by section 681 of Snyder's Comp. Laws we find it provided that cities of the first class "shall have authority to levy and collect a license tax on * * * dramshops, saloons, liquor sellers, *billiard tables and other gambling* tables, bowling alleys," etc.; and by section 683, that "the city council shall have power to enact ordinance to restrain, prohibit and suppress tippling shops, billiard tables, bowling alleys, houses of prostitution and other disorderly houses," etc.  To say the least, the statute casts a shadow on their reputation by the company to which it assigns them.  And also it would be peculiar if the statutes, which have granted to cities of the first class ordinarily well policed, the power to suppress billiard halls and poolrooms, should be construed to withhold that power from towns and villages often possessing little or no police protection.  In our opinion our statutes are not susceptible of that construction.

Our conclusions therefore are:  First, that the Legislature may lawfully delegate to municipal corporations the power to declare what shall constitute a nuisance within its corporate boundaries, and the power to prevent, abate or remove the same.  Second, that under such delegation of power the municipality may not lawfully declare a thing a nuisance which clearly is not one, but that it may declare anything a nuisance which is so *per se,* or which by reason of its location, management or use, or on account of local conditions or surroundings, may or does become a nuisance within the common law or statutory definition thereof, or those things which in their nature may be nuisances, but as to which there may be honest differences of opinion in impartial minds.  Third, that where a thing neither necessary nor useful may or may not be a nuisance, depending upon a variety of facts and circumstances, or upon local conditions and surroundings, the determination of the question by the municipality through its

legislative body, is, under such a grant of power, conclusive upon the courts. And fourth, that billiard halls and poolrooms are not protected as necessary or useful institutions; that they may or may not be nuisances, depending upon circumstances, and that the determination of that question locally by the town trustees of Eldorado is conclusive upon us. We therefore hold the section of the ordinance in question to be valid.

Was there such a trial of the case before the town justice as would warrant a judgment of conviction ? The judgment, omitting the caption, reads in part as follows:

"And now, on this the 25th day of January, 1910, came on to be heard the above entitled matter, the plaintiff present by W. C. Austin, special attorney for the plaintiff, and the defendant present in person and by his attorney, J. T. Shives. The defendant having waived arraignment in open court enters a plea of not guilty, and both parties having announced ready for trial, defendant waives jury and thereupon the plaintiff reads and offers the complaint charging the defendant with wilfully and unlawfully engaging in, establishing, opening, keeping, carrying on and assisting in carrying on, maintaining and assisting in maintaining a poolroom and place by then and there, to wit, on Jan. 24, 1910, in Eldorado, Oklahoma, keeping pool tables for hire and for public use in violation of ordinance Number 40 of the said incorporated town of Eldorado, Oklahoma. And the defendant after the plaintiff had proven the ordinance under which said charge was made enters a confession on his part of having committed the corporal acts and matters therein charged against him; and the court after hearing the argument of the counsel and after duly and fully considering the law applicable thereto, and the evidence as produced and confessed, finds the defendant guilty as charged; and it is the order of the court that a fine of $25.00 be and the same is entered against the said defendant.."

This judgment purports to have been rendered upon "the evidence as produced and confessed"; no attempt has been made to show by evidence of any kind that no testimony was in fact taken; and in the face of the judgment recital we will not presume that the justice did not in fact hear testimony.

We therefore hold that the petitioner's imprisonment is not

illegal. The writ of *habeas corpus* heretofore issued will accordingly be discharged, and the petitioner will be remanded to the custody of the town marshal. It is so ordered.

FURMAN, Presiding Judge, and DOYLE, Judge, concur.