STATE OF LOUISIANA et al. v. LAGARDE et al.

(Circuit Court, E. D. Louisiana. March 2, 1894.)

1. CONSTITUTIONAL LAW—INTERSTATE COMMERCE—FERTILIZERS.

Act La. No. 51 of 1886 required all manufacturers of and dealers in commercial fertilizers within the state to file with the board of agriculture a statement of the ingredients of their several fertilizers, to obtain licenses for their sale, and to place on each package sold a tag, to be furnished by the board, showing that such dealers had complied with the law; and penalties were provided for failure to conform to its provisions. Complainants, as soliciting agents, within the state, of an Illinois manufacturer, were in the habit of sending orders to their principal, and the fertilizer was shipped direct to the purchaser in Louisiana by such principal, and was never in complainants' possession or control. *Held*, that complainants were engaged in interstate commerce, and that such act, as applied to them, was an interference with such commerce, and hence the federal courts will restrain proceedings against them for non-compliance with such act.

2. SAME—INJUNCTION—AGAINST STATE.

The fact that such proceedings against complainants were taken in the name of the state will not affect the right of the circuit court to restrain the proceedings; for the injunction will go against the board of agriculture and its officers, at whose instance the proceedings were had, and not against the state.

3. SAME—AGAINST CRIMINAL PROSECUTIONS.

Whether or not the circuit court has jurisdiction to restrain the law officers of the state from instituting the criminal proceeding provided for by the act in the event of failure to comply with it, it can clearly restrain the board of agriculture, its agents and officers, from instigating any such prosecutions.

This suit was commenced by a petition filed in the civil district court for the parish of Orleans by the state of Louisiana, represented by M. J. Cunningham, attorney general, and Henry C. Newsom, commissioner of agriculture, against E. Lagarde & Son, a commercial partnership doing business in the city of New Orleans, and charging, among other things, said E. Lagarde & Son, as dealers in commercial fertilizers, with carrying on their business in violation and disregard of the provisions and requirements of Act No. 51 of the Laws of Louisiana of 1886. That everything has been done on the part of the state, contemplated by said act, as to the rules established by the bureau of agriculture; the issuance and distribution of circulars; the preparation of tags; the establishment of the necessary regulations for the printing and attaching to bags and packages of fertilizers of the analyses of such fertilizers, seeking to obtain samples, and publishing analyses of fertilizers; the establishment of regulations for obtaining such samples and making the analyses; the adoption of rules and regulations for the collection and deposit of money for tags sold and fines imposed, etc. That said E. Lagarde & Son, for the seasons of 1890–91 and 1891–92, submitted to the commissioner of agriculture the statement required by section 2 of the act, and obtained the certificates and licenses for each of those seasons required by section 3. That said E. Lagarde & Son have failed and refused to submit said statement as to the fertilizers they sell, or propose to sell, during the current season of 1892–93, and they therefore are not authorized, and have no right, to deal in commercial fertilizers in this state, but that, notwithstanding their failure to file the statement and receive the certificate aforesaid, they are and have been so dealing, and are therefore liable to a fine of $1,000 for each violation of the law, which petitioners now sue for. Further, that said E. Lagarde & Son have been guilty of many of said violations, selling without filing said statement and procuring such certificate, exceeding 10 in number, up to the commencement of this suit, etc., and during the past two seasons have sold in this state, as petitioners believe, an average of 3,000 tons of commercial fertilizers, and have sold up to this

time, during the current season (1892-93), 1,000 tons, making 7,000 tons up to this date; that the whole of said amount has been so sold by them in bags, some containing 200 pounds and some 100 pounds, or from 10 to 20 bags to the ton, or, at the lowest, 70,000 bags of fertilizers so sold by them; that they have failed entirely to comply with the positive requirements of section 6 of said act, having failed and refused to attach, or cause to be attached, to each of said bags, one of the tags prepared according to section 5; that the taggage affixed by law is 50 cents a ton, which said E. Lagarde & Son now owe on 7,000 tons heretofore sold by them, or $3,500, up to this time, which petitioners now sue for. Further, that, in addition to said taggage which said E. Lagarde & Son owe, they are liable, under section 6, to a penalty of $150 for each omission to affix a tag to each bag of fertilizer sold by them, making $10,500,000, which petitioners now sue for. And the petition details instances of various and sundry sales alleged to have been made by said E. Lagarde & Son without compliance with the law aforesaid. The petition further charges that said E. Lagarde & Son, and other dealers operating with them, have willfully desregarded the law, and hampered and crippled the bureau of agriculture and the experiment stations; that they have not the right to carry on business or the sale of fertilizers, directly or indirectly, personally or through an agent, or as agents, resident or nonresident, in violation of the law; that unless they are restrained they will continue their unlawful business, and cripple and destroy the efficiency of these important state institutions, and cause petitioners irreparable injury. Wherefore, they pray for order and writ of injunction enjoining said E. Lagarde & Son from further dealing in fertilizers or selling fertilizers in this state until they shall have filed with and submitted to the commissioner of agriculture a written or printed statement as required by section 2 of Act No. 51 of 1886, and procured a certificate required by section 3 of said act, and without placing upon and attaching to each bag or package of fertilizers one of the tags prepared and furnished by the commissioner of agriculture. And they also pray for judgment against E. Lagarde & Son, in solido, in the sum of $10,000 penalties incurred under section 3 of said act, and for the sum of $3,500 taggage or inspection fees, and for $10,500,000 penalties prescribed by section 6 of the act, and for costs and for general relief. On the said petition an injunction issued as prayed for. Thereafter, on motion of E. Lagarde & Son, suggesting their desire to bond the said injunction in accordance with the practice in Louisiana, the said injunction was dissolved, on a bond of $1,000; and thereafter, on petition of defendants, and bond for removal, the cause was transferred to this court, as one arising under the constitution and laws of the United States.

In this court the defendants filed a cross bill, wherein they allege that orators have been, during the years 1890, 1891, 1892, and 1893, engaged in the business or occupation of soliciting agents or drummers in this city and state for the Thompson & Edwards Fertilizer Company, a corporation created and organized under the laws of the state of Illinois, and are citizens of said state, the business of said fertilizer company being the manufacture and sale of commercial fertilizers; that orators' business consists in soliciting orders for said fertilizer company from persons in this state, inducing them to agree to purchase fertilizers from the said fertilizer company, and, when they have so secured an agreeing purchaser for said company, they notify said company by sending to it the name and address of the intending purchaser, and the terms of the sales agreed upon, and said company then ships direct from Chicago, Ill., to the said purchaser in this state, the fertilizers so sold; that "your orators do not manufacture, pack, ship, handle, or even see, said fertilizers, but the same are sold by the said fertilizer company to the purchaser, and shipped direct from the state of Illinois to the purchaser in the state of Louisiana, without your orators ever handling or owning or having any possession or control thereof;" that orators are not, and never have been, the soliciting agents of any other dealer in fertilizers than the said Thompson & Edwards Fertilizer Company; that they do not now have, and never have had, any fertilizer in their possession in this state, or exposed for sale in this state; have never had anything to do with said fertilizers, except as soliciting agents, as above stated; that for their services to said fertilizer

company they receive a commission on sales effected. through their efforts. Orators further aver that said Thompson & Edwards Fertilizer Company do not now, and have not during the years 1890, 1891, 1892, and 1893, or during orators' connection with the said firm, kept on hand or exposed for sale any fertilizers in this state. The bill then sets out in full Act No. 51 of the Acts of the General Assembly of the State of Louisiana for the Year 1886, and also the proceedings hereinbefore recited in regard to the institution of the suit. It is further averred that "orators are not manufacturers of or dealers in commercial fertilizers in this state, within the meaning of the provisions of said Act No. 51 of 1886, but that said commissioner of agriculture and the said attorney general claim that your orators' aforesaid business is subject to the provisions of said act. And orators charge that, if said act is applicable to the aforesaid business of orators, then said act is unconstitutional, null, and void, because in violation of the constitution of the United States, and especially of article 1, § 8, cl. 3, thereof; and, in support of this, orators aver that their business is now, and has ever been, that of soliciting agents or drummers of said Thompson & Edwards Fertilizer Company, for the sale and shipment of fertilizers by said company from the state of Illinois to the state of Louisiana, said shipments being made direct from Chicago, Ill., to the purchasers in Louisiana, and received by orators in the original packages; that orators' business or occupation is interstate commerce, and is exempted, by the above referred to provisions of the constitution of the United States, from any such regulations, interference, restriction, burden, or tax as is sought to be imposed by said Act No. 51 of 1886. And orators further say that, if said act be an inspection law, it must be confined to commercial fertilizers manufactured in this state, or prepared for export or actually offered and exposed for sale in this state, and so far as applicable to fertilizers manufactured in other states, and not brought into this state, except after sale, and while in course of direct transportation to the purchaser and consumer, said act is in violation of the commerce clause of the constitution of the United States above referred to. But orators charge that said act is not in any proper or legal sense an inspection law; that said act does not require or provide for any actual inspection or examination of the fertilizers subject to its provisions; that it is purely and simply a revenue act. Orators further charge that said act is in violation of article 29 of the present constitution of the state of Louisiana, in that it embraces more than one object, and of articles 202 to 218 of said constitution, which define and limit the power of the general assembly to impose licenses or any other taxes for purposes of revenue." It is further averred that "notwithstanding the premises, and the patent unconstitutionality and nullity of said Act No. 51 of 1886, the said commissioner of agriculture and the said attorney general threaten to enforce its provisions against your orators, and they threaten to (and, unless restrained by this court, will) bring, not only a number of civil suits against your orators, but will cause to be instituted a number of criminal prosecutions against your orators, and the members there , and will cause them to be indicted, arrested, and tried for each sale of fertilizers negotiated by them as the soliciting agents of the said Thompson & Edwards Fertilizer Company as aforesaid, and will so oppress and harass your orators and the individual members by a multiplicity of suits and prosecutions as to break up their aforesaid business, and subject them to irreparable loss and injury, and deprive them of their personal liberty." The prayer is that the defendants may answer, but not under oath, and that a writ of injunction may issue, restraining and enjoining Henry C. Newsom, commissioner of agriculture of this state, and M. J. Cunningham, attorney general of this state, and each of them, their agents, attorneys, and servants, including Charles A. Butler, district attorney, and John J. Finney, assistant district attorney, for the parish of Orleans, state of Louisiana, from instituting or filing, or directing any others to institute, any suit or suits, action or actions, civil or criminal, against your orators, or the individual members thereof, to enforce against them the provisions of Act No. 51 of 1886, to recover the tax or taggage fees therein provided, or the fines or penalties, or any of them, therein imposed, except in this cause and in this court, and from interfering with orators' business by reason of anything contained in said act; and in

the mean time they pray for a restraining order embracing all the relief prayed for.

On notice to show cause why the restraining order prayed for in the cross bill should not issue, the defendants M. J. Cunningham, attorney general, and H. C. Newsom, commissioner of agriculture, appeared by counsel; and thereupon, on their motion, the suit was ordered placed on the law docket of the court, and the application for an injunction and for equitable relief dismissed and abandoned,—consent, however, being given that the cross bill of E. Lagarde & Son should stand as an original bill. Thereupon, the defendants to the bill were ordered to show cause why an injunction pendente lite, as prayed for, should not issue; and, in the mean time an order was entered, restraining the defendants, their agents and servants, and certain prosecuting officers, from instituting further suits, civil or criminal, against the complainants.

On the hearing the complainants presented the affidavits of several dealers in fertilizers, to the effect that the law in question, in its operation, is in no wise an inspection law; that no inspections are made, or ever have been made, under the same; and that there are no officials appointed, or ever have been appointed, or are acting, under said statute, whose duty it is to inspect fertilizers, or to see that said tags required by the act are affixed to the packages of fertilizers offered for sale or sold. Complainants also presented affidavits to the effect that the members and agents of the bureau of agriculture have threatened and are threatening to prosecute complainants, civilly and criminally, in all the parishes of the state, based on every transaction of theirs as the soliciting agents of fertilizers, with the intention declared of involving them in a multiplicity of suits and prosecutions, unless they shall comply with the law, and that such suits and prosecutions are intended to break up complainants' business, which is a growing and profitable one, and thus destroy their property.

M. J. Cunningham, Atty. Gen., Lionel Adams, and Lazarus, Moore & Luce, for the State.

J. P. Blair, for Lagarde and others.

PARDEE, Circuit Judge (after stating the facts as above). Counsel for respondents present no argument—make no assertion, even— that the act in question (No. 51 of the Laws of 1886) is constitutional; nor, on behalf of respondents, is denial made of the matters presented by the evidence read on the hearing, to the effect that the said law, in its operation, is purely a revenue law, and in no sense an inspection law, and that the bureau of agriculture and their agents are threatening and intending to harass and annoy the complainants with civil and criminal prosecutions under the said act until they shall pay the revenue demanded, or be compelled to abandon their business. The whole showing is addressed to the proposition that under the circumstances of the case the court has no power to grant relief. The title of the act under which the respondents have proceeded against the complainants, and threaten to still further proceed by a multiplicity of suits and prosecutions, is as follows:

"An act to protect and advance agriculture by regulating the sale and purity of commercial fertilizers and the guarantee and conditions upon which they are to be sold, and by fixing the penalties incurred by the violation of such conditions: by providing for practical and other experiments in relation thereto; by reorganizing the board of agriculture, increasing its powers and those of the commissioner of agriculture; by creating an official chemist, defining his duties and powers, and by repealing laws in conflict herewith," etc.

The first section of the act provides for the reorganization of the bureau of agriculture, and defines some of its powers. The second section provides as to the duty of manufacturers and dealers in fertilizers before offering the same for sale; requiring a statement setting forth a description of the brand and package, and the named ingredients which they are willing to guaranty the fertilizer to contain. The third section provides for a certificate of compliance with the second section, to be issued by the bureau of agriculture, and that such certificate shall authorize the manufacture and sale of fertilizers, and further providing, under penalties, that no person who has failed to file the statement shall be authorized to manufacture for sale, or deal in, commercial fertilizers, in the state of Louisiana; the penalty being a fine of $1,000, recoverable before any court of competent jurisdiction. The fourth section provides for circulars setting forth the brands of fertilizers sold in the state, and their claimed analysis, to be distributed by the board. The fifth section provides that the commissioner of agriculture, under regulations, shall prepare tags, of suitable material, with certain marks, which shall be furnished to any dealer or manufacturer who has complied with the second and third sections upon payment of 50 cents for a sufficient number of tags to tag a ton of fertilizer. The sixth section provides that every person, before offering for sale any commercial fertilizers in the state of Louisiana, shall attach, or cause to be attached, to each package, one of the tags aforesaid, and that any person who sells, or offers for sale, any package which has not been tagged, shall be guilty of a misdemeanor, and, besides, liable to a penalty, and further provides a penalty for counterfeiting the aforesaid tags. The seventh section of the act requires that all fertilizers offered for sale in the state of Louisiana shall have printed upon each package, in such manner as the commissioner of agriculture shall determine, an analysis of such fertilizer or chemical. The eighth section authorizes the commissioner of agriculture to obtain fair samples of all fertilizers sold, or offered for sale, in the state of Louisiana; to cause the same to be analyzed, and the analyses published. The ninth section provides for the drawing of samples from any package of fertilizer whenever required by the purchaser. The tenth section provides that the copy of the official chemist's analysis of any fertilizer certified by him shall be admissible as evidence in any court of the state on the trial of any issue involving the merits of such fertilizer. The eleventh section relates entirely to rules and regulations to be adopted by the board of agriculture for the collection of moneys arising from the sale of tags, and from fines imposed by the act. The twelfth section gives authority to the commissioner of agriculture to employ a competent chemist to carry on and conduct experimental stations, etc. The thirteenth section relates to the compensation of the chemist for the conduct of experiments and experimental stations. The fourteenth section provides that the director of the state experiment station shall be considered as the official chemist of the bureau of agriculture. The fifteenth section relates to accounts of tags received

and sold, and moneys collected. The sixteenth section defines the terms "commercial fertilizer or fertilizers," where used in the act. And the seventeenth and last section provides for the act to go into effect at a certain date, and the repeal of conflicting laws.

It is to be noticed that neither in the title nor in any part of the act is the inspection of fertilizers mentioned, or in any wise provided for; the nearest approach to it being in the eighth section, where the commissioner of agriculture is authorized to obtain samples and cause an analysis to be made, and cause publication of the same. Under the terms of the act, a description of the packages of fertilizers, and the statement amounting to a guaranty of the ingredients, must be filed with the commissioner of agriculture, and a certificate of compliance obtained, before any person is authorized to deliver any commercial fertilizers in the state of Louisiana. There is no provision that this statement shall be made, and such certificate obtained, for each and every year or season, or more than once. The complainants aver in their bill that they have complied with this provision of the act. The tags provided for by the act are to be attached to each package before the same shall be offered for sale, from which it follows that the act contemplates only sales of fertilizers within this state, and by persons having possession or custody of the same. Now, as the business of complainants is admitted to be purely and simply that of soliciting agents for a manufactory, and that the only sales they negotiate or make are of fertilizers not within the state, nor in their custody, and that the complainants do not manufacture, pack, ship, handle, or even see, said fertilizers; that they do not now and never have had any fertilizers in their possession in this state, and have never exposed any for sale in this state,—it would seem that the act in question was not intended to, and does not, in any way affect their business, and that they are in no wise liable for any of the penalties provided for in the said act. The bill shows, however, that the law officers of the state have otherwise construed the law; and for that reason it is not requisite that this court should at this time, and for the purposes of this case, so hold or declare. The business of complainants is interstate commerce, and it is beyond the regulation of the state of Louisiana. Nor can the state of Louisiana levy any tax upon it. Robbins v. Taxing Dist., 120 U. S. 492, 7 Sup. Ct. 592; Leloup v. Port of Mobile, 127 U. S. 640–648, 8 Sup. Ct. 1380; Asher v. Texas, 128 U. S. 129, 9 Sup. Ct. 1; Stoutenburgh v. Hennick, 129 U. S. 141–148, 9 Sup. Ct. 256. Even if the act in question could be construed as an inspection law, or as an exercise of the police power of the state, the complainants' business cannot be affected thereby, as complainants do not deal with, nor handle, nor bring to the state, fertilizers; and, even if the complainants were to import into the state original packages of fertilizers, and the act in question could be properly construed as an inspection law, within and under the police power of the state, still the interference with complainants' business would be in violation of clause 3, § 8, art. 1, of the constitution of the United States. Leisy v. Hardin, 135 U. S. 100, 10 Sup. Ct. 681; In re Sanders, 52 Fed. 802.

The case, then, is one within the jurisdiction of this court, and warrants relief according to equity principles and practice. An injunction is the usual relief in such cases, and it is asked for in this case. The respondents say that it cannot be issued, because the suit is one against the state, and the state cannot be enjoined, nor can it be issued against the law officers of the state, to restrain them from instituting criminal proceedings under the said law, nor can it issue against state officers or state boards, because such an injunction would be equivalent to an injunction against the state. The state of Louisiana was a party to the suit under which complainants' bill, as a cross bill, was originally filed; and when, by consent of parties and an order of court, the cross bill was permitted to stand as an original bill, the state of Louisiana was not dismissed, but remained as, practically, a nominal party. The objection that the suit is one against the state, so far as it has merit, can be eliminated from the case by the formal dismissal of the bill as to the state of Louisiana. The board or bureau of agriculture, or any of the individual members thereof, and some other persons who cannot be classed as agents, attorneys, or employes of said board, against whom complainants desire relief, should be made parties. Leave will be given to the complainants to amend their bill in these respects.

The state being out of the case, there is only one serious question as to the scope of the injunction that ought to be issued, and that is whether a court of equity can enjoin the law officers of the state from instituting and prosecuting criminal suits or proceedings under a void or unconstitutional law. Many cases on each side of this question have been cited and examined, but I do not think it necessary to review them at this time, for the purposes of this case, nor to determine the yet unsettled question of how far proceedings criminal in their character, taken by individuals or organized bodies of men, tending, if carried out, to despoil one of his property or other rights, may be enjoined by a court of equity. In re Sawyer, 124 U. S. 200, 8 Sup. Ct. 482; Lottery Co. v. Fitzpatrick, 3 Woods, 222; Bottling Co. v. Welch, 42 Fed. 561; Texas Railroad Commission Case, 51 Fed. 529. There is only one section of the act in question that in any way calls for or requires the district attorneys of the state, as such, to institute criminal proceedings against the complainants, even if complainants' business should be construed as being within the act; and that section relates to cases where complainants shall be charged with selling, or offering to sell, any package of commercial fertilizer which has not been tagged as provided in the act. It is not at all probable that the district attorneys of the state will constitute themselves inspectors of fertilizers, or agents of the board of agriculture, and in that way attempt to harass complainants, while it is more than probable that any and all proceedings, civil or criminal, instituted against the complainants for noncompliance with the act in question, will be instigated, instituted, and prosecuted only through the action of the board of agriculture, its members, officers, agents, and attorneys. There can be no doubt about the power of the court to issue an injunction running to those

persons, restraining their action as prayed for in the bill; and, on complainants amending their bill as herein suggested, such injunction may issue, but not to interfere with the prosecution of any suits, civil or criminal, commenced before the filing of this bill.