GLUCOSE REFINING CO. v. CITY OF CHICAGO et al.

(Circuit Court, N. D. Illinois, E. D.   May 23, 1905.)

No. 27,599.

1. MUNICIPAL CORPORATIONS—CITY ORDINANCES—INVALIDITY—JURISDICTION.

In a suit to enjoin the enforcement of city ordinances, federal jurisdiction cannot be predicated on an allegation that in passing the ordinances the city exceeded its charter powers; such question being one for the determination of the state courts.

[Ed. Note.—For cases in point, see vol. 13, Cent. Dig. Courts, § 897.]

2. SAME—AMOUNT IN CONTROVERSY.

Where, in a suit in a federal court to enjoin the enforcement of a municipal smoke ordinance, complainant alleged that it was a foreign corporation, and that the amount involved was largely in excess of $2,000, exclusive of interests and costs, the bill sufficiently showed jurisdiction of the federal courts.

[Ed. Note.—Jurisdiction of Circuit Courts as determined by the amount in controversy, see notes to Auer v. Lombard, 19 C. C. A. 75; Tennent-Stribling Shoe Co. v. Roper, 36 C. C. A. 459.]

3. SAME—EQUITABLE JURISDICTION—MULTIPLICITY OF SUITS.

Where a bill to enjoin enforcement of an alleged illegal municipal smoke ordinance, providing a fine for each separate violation, alleged that it was filed on behalf of complainant and all others similarly situated, and charged that not only was complainant harassed by a multiplicity of suits, but that more suits were threatened by defendant city for violation of the ordinance; that there were a large number of manufacturing plants in the city of Chicago similarly situated with complainant, and similarly affected; that the ordinance was void, and that a compliance therewith would work irreparable injury and loss of property—a cause of action for equitable relief was presented; and this though a décree restraining further prosecutions under the ordinance would incidentally interfere with criminal proceedings in the state courts.

4. SAME—PROCEEDINGS IN STATE COURTS—INJUNCTION.

Rev. St. U. S. § 720 [U. S. Comp. St. 1901, p. 581], providing that federal courts shall not enjoin proceedings in state courts, does not limit the power of the federal court to restrain parties of whom it has jurisdiction from instituting proceedings in any court.

[Ed. Note.—Federal courts enjoining proceedings in state courts, see notes to Garner v. Second Nat. Bank, 16 C. C. A. 90; Central Trust Co. v. Grantham, 27 C. C. A. 575; Copeland v. Bruning, 63 C. C. A. 437.]

5. SAME—NUISANCE—POWER TO DECLARE.

Rev. St. Ill. art. 5, c. 24, par. 75 (Hurd's Rev. St. 1903, p. 294), providing that a city council in cities shall have the power to declare what shall be a nuisance, to abate the same, and to impose fines on parties who may create, continue, or suffer a nuisance to exist, authorized the Chicago city council to pass Ordinance March 23, 1903, § 10, declaring the emission of dense smoke from the stack of any boat, locomotive, or chimney anywhere within the city, with certain exceptions, to be a public nuisance.

6. SAME—UNIFORM OPERATION.

Chicago City Ordinance March 23, 1903, § 10, declares the emission of dense smoke a public nuisance, and prohibits such emission for more than three minutes, or, in case fire boxes are being cleaned or new fires started, for six minutes, in any hour of the day or night, but declares that no prosecution shall be had against plants installed prior to the passage of the ordinance until the expiration of a year, in order to permit the owner to rebuild or re-equip the same, provided he commences his plans to do so at once. *Held,* that such ordinance was not unconstitutional, in that

138 F.—14

it did not operate equally on a manufacturer maintaining a chimney serving only one fire box, and on complainant, who maintained two chimneys, one serving 16 fire boxes, and the other 7; it not appearing that complainant, by some alterations in its plant, could not comply with the ordinance.

Kretzinger, Gallagher, Rooney & Rogers, for complainant.
Howard S. Taylor, for defendants

KOHLSAAT, Circuit Judge. Prior to March 23, 1903, complainant was the owner of the sugar refining plant in question, situated in the city of Chicago. On that date the city passed an ordinance, section 10 of which, so far as it is pertinent herein, reads as follows:

"The emission of dense smoke from the smokestack of any boat or locomotive, or from any chimney anywhere within the city, shall be deemed and is hereby declared to be, a public nuisance, but no prosecution for the emission of dense smoke shall be commenced, unless within ten·days prior thereto at least three notices shall have been mailed to the offender that dense smoke has been seen emitted from his premises. The owner or owners, lessee, agent, or manager of any boat or locomotive, and the proprietor, lessee or agent of any building, factory, mill, works, or other establishment having smokestacks or chimneys, who shall permit or allow dense smoke to issue or to be emitted from the smokestack of any such boat or locomotive, or the chimney of any buildings, factory, mill, works, or other establishment having smokestacks or chimneys within the corporate limits to exceed three minutes (excepting in cases where the fire box is being cleaned out or new fire built therein, in which case the limit shall be six minutes) in any hour of the day or night, shall be deemed and held guilty of creating a nuisance, and shall for every such offense be fined a sum of not less than ten dollars ($10) nor more than one hundred dollars ($100). * * * Provided, that no prosecution under this ordinance shall be commenced against the owner, or owners, lessee, agent or manager of any boat, locomotive, or the proprietor, lessee or agent of any building, factory, mill, works or other establishment having smoke stacks or chimneys, the plant of which shall have been installed prior to the passage of this ordinance, until the expiration of one year after the passage of this ordinance, within which to rebuild and re-equip the same in accordance with the provisions of this ordinance: provided further, that no such owner, owners, lessee, agent or manager shall be entitled to said one year unless he shall at once commence his plans for the rebuilding and re-equipping of such plant and shall proceed with such work to the satisfaction of the board upon inspection at intervals of three months during said period of one year."

For violation of this ordinance, the city proceeded to prosecute complainant, and has already instituted 18 suits, and threatens to bring further suits. The bill is filed by complainant, for itself and on behalf of all persons and corporations similarly situated, to enjoin the further institution of suits, on the ground that the ordinance is obnoxious to the federal Constitution, and otherwise invalid.

The cause is now before the court on a motion for a preliminary injunction, based upon the bill of complaint, duly verified, and the affidavit of Colville, its master mechanic. The defendants present no defense papers. The matter therefore comes up upon the allegations of the bill and affidavit alone, which, in so far as they are proper to be considered as matters of fact, must for the purposes of this hearing be taken as admitted. From these it appears that complainant is a corporation of New Jersey, and that the amount in-

volved is largely in excess of $2,000, exclusive of interest and costs. These facts alone sufficiently show jurisdiction in this court. No jurisdiction in the federal courts can be predicated upon complainant's allegation charging that in passing the ordinance in question the city of Chicago exceeded its charter powers. Where it appears from plaintiff's pleadings that such power was wanting in the city, the question becomes one for the state courts to determine. Barney v. City of New York, 193 U. S. 430, 24 Sup. Ct. 502, 48 L. Ed. 737; Arrowsmith v. Harmoning, 118 U. S. 194, 6 Sup. Ct. 1023, 30 L. Ed. 243; Virginia v. Rives, 100 U. S. 313, 25 L. Ed. 667.

It is insisted by defendants that the bill discloses no case for jurisdiction in equity. In City of Chicago v. Collins, 175 Ill. 445, 51 N. E. 907, 49 L. R. A. 408, 67 Am. St. Rep. 224, it is held that the enforcement of a void ordinance may be enjoined to prevent a multiplicity of suits, at the instance of any person whose interests are impaired by it, where there exists a right affecting many persons. The bill alleges that not only is complainant harassed by a multiplicity of suits, but that more are threatened by defendants; that there are a large number of manufacturing plants in the city of Chicago similarly situated with complainant; and that it files the bill in its own behalf, and in behalf of all other persons and corporations in like situation, thereby bringing the case within the rule in Chicago v. Collins aforesaid, and the authorities therein cited. The rule laid down in that case is approved in Poyer v. Village of Des Plaines, 123 Ill. 111, 13 N. E. 819, 5 Am. St. Rep. 494. In Cicero Lumber Co. v. Town of Cicero, 176 Ill. 9, 51 N. E. 758, 42 L. R. A. 696, 68 Am. St. Rep. 155, the court says, "But it is well settled that there are two exceptions to the rule that courts of equity will not interfere to restrain trespasses, whether committed under form of law or otherwise." These exceptions are (1) to prevent irreparable injury; (2) to prevent a multiplicity of suits. In Third Ave. R. Co. v. Mayer, 54 N. Y. 161, the court holds that the imminence of innumerable suits in a justice court, where there is no right of consolidation, as in a court of record, justifies the interference of equity. In Brewing Co. v. Superior, 93 N. W. 1120, the Supreme Court of Wisconsin lays down the rule that equity may enjoin prosecutions for misdemeanors or violations of municipal ordinances "where they are resorted to or threatened as a means of preventing the enjoyment of property rights, and there is no other way of adequately remedying the mischief." The allegations of the bill at bar bring the case fairly within this principle of law. Jurisdiction of a court of equity is further sustained by the following: Mayor, etc., of Baltimore v. Radecke, 49 Md. 217, 33 Am. Rep. 239. If the allegations of the bill are to be sustained, it is evident that the remedy at law is not "as practical and efficient to the ends of justice and its prompt administration as the remedy in equity," to quote the language of the Supreme Court in Boyce v. Grundy, 3 Pet. 210, 7 L. Ed. 655. Here not only may the multiplicity of suits be avoided, but the validity of the ordinance may be settled once for all. The bill also charges that to comply with the ordinance would work irreparable injury. If the ordinance be void,

this ground, also, would warrant the interposition of equity. Walla Walla v. Walla Walla Water Co., 172 U. S. 12, 19 Sup. Ct. 77, 43 L. Ed. 341; Springhead Spinning Co. v. Riley, L. R. 6 Eq. 558. Even though the decree of a court of equity might operate incidentally to restrain criminal proceedings, yet, where the threatened proceedings will work irreparable injury and loss of property, jurisdiction in equity will be sustained. Manhattan Iron Works v. French, 12 Abb. N. C. 446; Quint v. Board, etc., 64 Miss. 483, 4 South. 548; Atlanta v. Gate City Light Co., 71 Ga. 106; Georgia R. Co. v. City of Atlanta (Ga.) 45 S. E. 256; Port of Mobile v. R. Co., 84 Ala. 115, 4 South. 106, 5 Am. St. Rep. 342. There are cases holding suits for breach of such an ordinance to be civil proceedings—as, for instance, Graubner v. Jacksonville, 50 Ill. 87; Oshkosh v. Schwartz (Wis.) 13 N. W. 552.

Some question is made as to the right of the federal court to grant the relief asked for, by reason of the provisions of section 720 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 581]. While this court will not attempt to restrain the state court in a pending proceeding, the statute may not be construed to limit the power of the federal court to restrain parties from instituting proceedings in any court. Texas Ry. Co. v. Kuteman, 54 Fed. 547, 4 C. C. A. 503. As to suits not yet begun, this court has prior jurisdiction to the state court, and for that reason, also, the rule does not apply. French v. Hay, 22 Wall. 253, 22 L. Ed. 857; Sharon v. Terry et al. (C. C.) 36 Fed. 337, 1 L. R. A. 572; State of Louisiana v. La Garde et al. (C. C.) 60 Fed. 186. It therefore seems clear that the court has jurisdiction for the purposes of this hearing.

The ordinance declares the issuance of dense smoke within certain limits for the period named therein to be a nuisance per se, and requires no proof of the actual effect of such smoke. This, the bill charges, the city council has no power to do, since smoke was not held to be a nuisance at the common law, and may or may not be a nuisance in fact. In the absence of statutory provisions the municipality would be without power so to declare it. Lake View v. Letz, 44 Ill. 81; St. Louis v. Heitzberg Brwg. Co., 141 Mo. 375, 42 S. W. 954, 39 L. R. A. 551, 64 Am. St. Rep. 516; Dillon on Municipal Corp. (4th Ed.) §§ 95, 374; Am. & Eng. Enc. of Law, vol. 21, p. 270. Paragraph 75 of article 5, § 1, of chapter 24 of the Revised Statutes of Illinois (Hurds' Rev. St. 1903, p. 294), provides that the city council in cities shall have the power "to declare what shall be a nuisance and to abate the same and to impose fines upon parties who may create, continue or suffer nuisances to exist." Under this provision of the charter the ordinance aforesaid was passed. With regard to the effect of this class of legislation, Dillon, in his work on Municipal Corporations (4th Ed.) § 308, says: "It is competent for the Legislature to delegate to municipal corporations the power to make by-laws and ordinances with appropriate sanctions, which, when authorized, have the force, in favor of the municipality and against persons bound thereby, of laws passed by the Legislature." In Mason v. Shawneetown, 77

Ill. 537, the court holds that such an ordinance "cannot be regarded otherwise than a law of and within the incorporation." At page 740 of volume 21 (2d Ed.) Am. & Eng. Enc. of Law, it is said, "In so far as the Legislature may declare nuisances, a municipality may be empowered by ordinance to declare things or acts nuisances, though they might not be such in the absence of such ordinance," subject to the cognizance of the courts as to reasonableness. To the same effect is Laugel v. Bushnell, 197 Ill. 26, 63 N. E. 1086, 58 L. R. A. 266. In this case the court proceeds to classify nuisances, and says:

"(3) Those which in their nature may be nuisances, but as to which there may be honest differences of opinion in impartial minds. The power granted by the statute to the governing bodies of municipal corporations to declare what shall be nuisances, and abate the same, etc., authorizes such bodies to conclusively denounce those things falling within the first and third of these classes to be nuisances."

In a case involving an ordinance declaring a slaughterhouse to be a nuisance under the foregoing clause of its charter, the Supreme Court of Illinois, in Harmison v. Lewiston, 153 Ill. 313, 38 N. E. 628, 46 Am. St. Rep. 893, says:

"By virtue of the statute above quoted, and in the light of the interpretations placed upon it by these decisions, we think power was conferred upon appellee to adopt the ordinance in question."

In section 379 of Dillon's work aforesaid, it is said:

"Much must necessarily be left to the discretion of the municipal authorities, and their acts will not be judicially interfered with unless they are manifestly unreasonable and oppressive, or unwarrantably invade private rights, or clearly transcend the powers granted them."

"But in doubtful cases," says the Supreme Court of Illinois in the case of N. Chicago City Ry. Co. v. Lake View, 105 Ill. 212, 44 Am. Rep. 788, "where a thing may or may not be a nuisance, depending upon a variety of circumstances, requiring judgment and discretion on the part of the town authorities in exercising their legislative functions, under a general delegation of power like the one we are considering [declaring the running of steam cars upon the streets to be a nuisance], their action under such circumstances would be conclusive." This general rule is also recognized in Roberts v. Ogle, 30 Ill. 459, 83 Am. Dec. 201; Baumgartner v. Hasty, 100 Ind. 575, 50 Am. Rep. 830; State v. Heidenhain, 42 La. Ann. 483, 7 South. 621; Walker v. Jameson, 140 Ind. 598, 37 N. E. 402, 39 N. E. 869, 28 L. R. A. 679, 683, 49 Am. St. Rep. 222; Monroe v. Gerspach, 33 La. Ann. 1011; Gundling v. Chicago, 176 Ill. 349, 52 N. E. 44, 48 L. R. A. 230; Cincinnati v. Miller, 11 Ohio Dec. 788; People v. Detroit White Lead Works, 82 Mich. 472, 46 N. W. 735, 9 L. R. A. 722; People v. Lewis, 86 Mich. 276, 49 N. W. 140. The case of St. Paul v. Gilfallin, 36 Minn. 298, 31 N. W. 49, quoted by defendants, is in fact an authority for the complainant herein. It holds that, in the absence of such legislative authority as that under which the ordinance here involved was enacted, the city of St. Paul had no power to declare dense smoke to be a nui-

sance, but conclusively intimates that such power existed in Illinois as to justify the decision in Harmon v. Chicago, 110 Ill. 400, 51 Am. Rep. 698; and North Chicago City Ry. v. Lake View, aforesaid.

It is clear that the city of Chicago is invested with the power to declare what is a nuisance, and to abate the same. Whether it has the power to declare dense smoke a public nuisance, or a nuisance per se, is raised in the case of Harmon v. Chicago, supra. The court there says it does not pass upon the power of the city to make the issuance of dense smoke a public nuisance, but sustains a fine of $50 assessed against appellant, based upon that ordinance; thereby holding the ordinance valid, since it can hardly be contended that the ordinance, which clearly makes dense smoke a nuisance per se, could be bad as such, and good when evidence is adduced to show a nuisance in fact. That case involved the issuing of dense smoke from a tug in the Chicago river. The court took judicial notice of the fact that the Chicago river is in the midst of the city. Complainant's bill shows its plant to be near the river. The court proceeds further to say:

"At common law a nuisance was anything that worked hurt or damage. A public or common nuisance was that which affected the public, or was an annoyance to the King's subjects at large. Precisely that is the character of the dense smoke emitted from defendant's tugboat."

The court says again:

"Certainly anything that is detrimental to certain classes of property and business in a populous city, and is a personal annoyance to the public at large within the city, needs not to be defined by ordinance or by lexicographers to be known to the common mind as a public nuisance. It is so per se. * * * Nor will any subtle distinctions be indulged in as to what is meant by 'dense smoke,' as those terms are used in the ordinance. The terms will be understood as commonly employed, and this court will understand by 'dense smoke' precisely what everybody else does that has ever seen a volume of dense, dark smoke as it comes from the smokestack or chimney where common soft or bituminous coal is used for fuel in any considerable quantities."

It is true the parties had put in an agreed statement of facts in this case, showing what were the effects of dense smoke, and the decision must be considered in the light of that fact. In the case of Monroe v. Gerspach, supra, the court holds that:

"Inasmuch as the question of nuisance is one of fact, it becomes necessary in populous towns to regulate such matters by public ordinance, and public policy requires that the municipality should not be disturbed in the exercise of its powers unless it clearly transcends its authority."

In the case of Village of Des Plaines v. Poyer, 123 Ill. 348, 14 N. E. 677, 5 Am. St. Rep. 524, the court hold the ordinance invalid upon the ground that, in their judgment, the act prohibited was not a nuisance. In like manner the court in Hoops v. Village of Ipava, 55 Ill. App. 94, hold that the act prohibited was a nuisance. Judge Gary, in Field v. Chicago, 44 Ill. App. 410, quotes Justice Caton in Munn v. Burch, 25 Ill. 35, to the effect that "courts will not pretend to be more ignorant than the rest of mankind."

From the foregoing authorities it follows that the city of Chicago was acting within its charter powers in passing the ordinance un-

der consideration, and that the court should not interfere with the enforcement thereof unless there was involved an unreasonable exercise of the charter power. It is held in the case of Harmon v. Chicago, supra, that a municipality cannot by ordinance make that a public nuisance which was not in fact such. The same rule is laid down in numerous cases, and must be deemed a settled rule for the purposes of this motion. It is also well settled at common law that acts or things which (1) are prejudicial to public morals, (2) dangerous to life, and (3) injurious to public rights were nuisances per se. "Formerly," says Wood in his work on Nuisances, p. 766, "all those trades and uses of property which by experience had been demonstrated to be noxious and hurtful were held to be nuisances per se." While science has gone far to remedy the baneful effects of many of the acts and uses then condemned as per se hurtful to persons, morals, and property, it has necessarily added many which were not at that time such, or so considered. The rule above stated has often been made to bend to suit the requirements of commerce or manufacture. Practically an utter absence of factory smoke betokens an utter absence of people who might have been subjected to inconvenience or injury thereby. It seems clear that all regulations of the uses of property should be created with a reasonable reference to the necessary demands of trade and manufacture. While, of course, life, health, and morals are of primary consideration, mere inconvenience and discomfort might not be. In the former there can be no comparison of advantages with disadvantages. The welfare of the individual and the state, from every viewpoint, demands that public health, life, and morals shall not be one whit compromised. From the foregoing citations it will be seen that certain trades and uses of property were declared to be nuisances per se because they were demonstrated to be noxious and hurtful by experience. Ivonton v. Perlie, 15 Shaw & Dunlap, 775. They included tanneries, limekilns, forges, and many other enumerated uses. More recently the running of hogs in the streets, and slaughterhouses, have been so held.

As above noted, there has been some disagreement of the courts as to smoke, and questions have arisen with regard to the power of a legislature to declare the issuance of dense smoke within corporate limits to be a nuisance, without regard to the immediate surroundings. The authorities in support of this power have been cited above. The bill admits the issuance of dense smoke, and it is a matter of common knowledge, of which the court may take cognizance (State v. Tower [Mo. Sup.] 84 S. W. 12; Moses v. U. S., 16 App. D. C. 428; Field v. Chicago, supra), that smoke emitted from a tall chimney is carried over a wide territory, and that when dense it deposits soot to such an extent as to injure property and health wherever it spreads. It is doubtful whether any one of the common-law uses or trades did or could affect so large a community as does dense smoke issued from such a chimney as that of complainant. But the court is not left to this source of knowledge. There can be no stronger declaration of the character of such an act than that of the community at large. The ordinance

in question is the expression of the people's representatives in this city, which, in turn, makes it the summing up of all the judgment of all the people upon that subject. Soon Hing v. Crowley, 113 U. S. 708, 5 Sup. Ct. 730, 28 L. Ed. 1145. All things considered, it is plain that the ordinance in question was a reasonable exercise of the power given to the city in its charter, and, that being so, the court will not be warranted in holding the ordinance invalid as in excess of the power of the city.

There remains yet to be considered the allegation that the ordinance operates unequally upon complainant's plant, and is therefore unconstitutional. It does appear from the bill that prior to the passage of the ordinance, and up to the time the bill was filed, complainant's chimneys discharged smoke—one for sixteen fire boxes, and one for seven—and that it is required by the ordinance to observe the same rule as to the time during which dense smoke can be issued as is required of the chimney serving one fire box. It is therefore claimed that the ordinance, while not so upon its face, yet, when applied to conditions as they exist, operates unfairly upon complainant, and constitutes a discrimination. The ordinance deals only with chimneys, and places them all upon the same footing. It provides: (1) That the emission of dense smoke shall be a public nuisance. (2) That three notices shall be mailed ten days before prosecution is commenced. (3) The emission of dense smoke for more than three minutes, or, in case fire boxes are being cleaned or new fires started, six minutes, in any hour of the day or night, shall be deemed a nuisance, and punished by fine. (4) It further provides who shall see to its enactment. (5) No prosecution can be had against plants installed prior to the passage of the ordinance until the expiration of a year from its passage, in order to rebuild and re-equip the same, provided the owner commences at once his plans so to do. Thus it is seen complainant had a year in which to construct its plant so as to enable it to comply with the ordinance, and it nowhere appears that complainant, by some alterations in its plant, could not comply with the provisions thereof. If it is to be admitted that each fire box is to have the privilege of smoking one-twentieth of an hour, and in certain cases one-tenth of an hour, then it is manifest the ordinance would permit complainant's chimney to smoke practically all the time, which would defeat, of course, the object of the ordinance.

The case of Ho Ah Kow v. Nunan, 5 Sawy. 552, Fed. Cas. No. 6,546, cited by complainant, is not in point. The ordinance there under consideration provided that prisoners immediately upon arrival at the jail should have their hair cut off to a uniform length of one inch from the head. This required the removal of the queue from a Chinaman, and a consequent and peculiar degradation. The court holds that the passage of the ordinance exceeded the powers of the board of supervisors, and that the cutting of the hair could not be construed into a measure of discipline or health, and showed upon its face that it was done to add to the severity of the punishment of the prisoner, he being a Chinaman. There is in the ordinance in question no evidence of any attempt to deal unevenly

with complainant, nor can any be inferred.   In Soon Hing v. Crowly, supra, Justice Field says:

"The rule is general with reference to the enactments of all legislative bodies that the courts cannot inquire into the motives of the legislators in passing them, except as they may be disclosed on the face of the acts, or inferable from their operation, considered with reference to the condition of the country and existing legislation."

If the ordinance now under consideration is a legitimate exercise of the police powers of the city, it should be interfered with by the courts with extreme caution.   Again, it is not clear from the bill that dense smoke is unavoidable, or that the creation of it is of advantage to complainant.   I am of the opinion that, under its police powers, under the facts of this case, the city has the right to regulate the emission of dense smoke from chimneys, as such, without regard to the use owners and operators make of them.   The argument of complainant that in its operation the ordinance works unequally, and therefore is void, finds its premise in the assumption that complainant has an unqualified right to maintain his property in the condition as it existed at the time the ordinance was passed. This manifestly is not tenable, for private property is held subject to the reasonable exercise of the police powers of the state.   Nor does the fact that one may be able to comply with the ordinance without making a change in his property, while another must make certain alterations to conform thereto, render the enactment void for inequality.   The bill charges that the enforcement of the ordinance will damage it to the extent of $25,000.   "Special burdens," says Justice Field in Barbier v. Connolly, 113 U. S. 27, 5 Sup. Ct. 357, 28 L. Ed. 923, "are often necessary for general benefit."   The position taken by complainant involves the whole question of the suppression of dense smoke.   If the health and morals of the city require it, even such a result as the bill declares should not be allowed to defeat the efforts of the authorities by proper means to protect the public.   Again, in Barbier v. Connolly, supra, the court uses the following language in speaking of the rights secured by the fourteenth amendment:

"But neither the amendment, broad as it is, nor any other amendment, was designed to interfere with the power of the state, sometimes called the 'police power,' to prescribe regulations to promote the peace, morals, education, and good order of the people."

Even a long-exercised right would not protect against an ordinance such as is here involved, if the public weal was at stake. Fertilizing Co. v. Hyde Park Co., 97 U. S. 659, 24 L. Ed. 1036; Brannon on the Fourteenth Amendment, p. 230.

The broad underlying principle which should control in cases of this character is that rights of owners and users are all held subject to the right of the proper authority to require them to conform to all those regulations which are absolutely essential to the preservation of life, health, morals, and good government.   The regulations must not consist of whims or matters of taste, but of things vital.   It is difficult to adjust the exact rights of business interests and public good, but, once adjusted, society, as organized, has the

power from time to time, as need requires, to assert itself for the protection of itself. The motion for a preliminary injunction must be denied.

The cause has been passed upon at some length by the court on suggestion of counsel that such a course might facilitate a disposition of the cause on the merits. Inasmuch as no appeal lies from the denial of the motion for a preliminary injunction, counsel are at liberty to take steps to that end if they can agree upon the means.

---

### THE ROMA.

#### (District Court, S. D. New York.   May 27, 1905.)

SHIPPING—OBSTRUCTION OF SLIP BY LINE—NEGLIGENCE.

A steamship had been moored in one side of a slip for three days, during which time the bulkhead at the inner end of the slip had been occupied each night by a small passenger steamer making regular daily trips. On the third day the ship ran a hawser across the slip, making it fast to the pier on the other side, a few feet above the water. When the steamer came in about sunset no notice of the presence of the line was given her until she was within 100 feet, when she was shouted to from the ship and reversed, but struck the hawser and was injured before she lost headway. *Held*, that the ship was negligent in not placing a light upon the hawser or otherwise notifying the steamer of its presence, and was liable for the damage caused; that the smaller vessel was not in fault either for excessive speed or because she had no lookout, it not appearing that one could have seen the obstruction better than the master, who was at the wheel in the pilot house 12 feet from the stem.

[Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Collision, §§ 96–102.]

In Admiralty.

Wing, Putnam & Burlingham, for libellants.

Benedict & Benedict, for claimant.